PEOPLE v. STURMAN.

1. CRIMINAL LAW—STOLEN PROPERTY—IDENTIFICATION.

In a prosecution for receiving stolen property, where, on direct examination, the complaining witness testified that he could identify Exhibit "A," a case or box of cigarettes as his, which had been stolen from him, but on cross-examination he admitted he could not identify the cigarettes that were in the box because they were similar to other cigarettes of like brand, a motion to strike was properly denied, since he might be able to identify the case or box and yet be unable to identify the cigarettes.

2. SAME—APPEAL AND ERROR — HEARSAY — FAILURE TO OBJECT— SAVING QUESTIONS FOR REVIEW.

The Supreme Court, on error, will not consider a complaint based on the testimony of complaining witness that he knew the cigarettes were his because the man who stole them told him they were, where no objection appears of record, and no motion to strike the same was made.

3. SAME—VOLUNTARY ACTION—WAIVER.

Although defendant could not have been compelled to write his name and that of his supposed alias for the purpose

of comparison with certain checks claimed by the prosecution to have been given in payment for the stolen cigarettes and cashed by him, where he did so voluntarily, *held*, that he waived his rights therein.

4. SAME—STATUTORY RIGHTS—WAIVER.

Such waiver of defendant's right to refuse to sign his name, *held*, not a waiver of his right to object to the comparison with said checks under 3 Comp. Laws 1915, § 12539.

5. SAME.

The withdrawal of defendant's objection to the examination of the witness called to compare defendant's handwriting with that on the canceled checks, after the prosecution had laid the proper foundation for his qualification as an expert, and defendant's failure to interpose his right to have such comparison excluded under 3 Comp. Laws 1915, § 12539, *held*, to be a waiver of his rights thereunder.

6. SAME—WITNESSES — HANDWRITING EXPERT — QUALIFICATIONS— SUFFICIENCY.

Testimony by a witness called as an expert on handwriting that he had been working as a bookkeeper in a bank for five years, and that in his duties he compared 400 or 500 signatures daily, *held*, sufficient to qualify him as an expert.

Error to recorder's court of Detroit; Wilkins (Charles T.), J. Submitted January 15, 1920. (Docket No. 104.) Decided February 27, 1920.

Abraham Sturman was convicted of receiving stolen property, and sentenced to imprisonment for not less than 2½ nor more than 5 years in the State prison at Jackson. Affirmed.

*Doyle & Cameron*, for appellant.

*Alex. J. Groesbeck*, Attorney General, *Matthew H. Bishop*, Prosecuting Attorney, and *Van H. Ring*, Assistant Prosecuting Attorney, for the people.

BIRD, J. An information was filed in the recorder's court in the city of Detroit, charging the defendant

and one Nathan Rifkin with having received and concealed 360,000 Camel cigarettes, knowing the same to have been stolen. Defendant demanded, and had, a separate trial at which he was found guilty. It appears by the record that one August Quandt, a wholesaler of tobaccos in the city of Detroit, lost, by burglary, from his place of business on the night of December 19, 1917, 36 cases containing 360,000 Camel cigarettes, the market value of which was $1,701. That a day or so thereafter defendant, under the alias of J. Rubin, sold to one Schurgin, a retailer of tobacco, the same number of cases of Camel cigarettes for a consideration of $1,260, which Schurgin paid for by four checks. The checks bore different dates. Two of them were cashed and payment was stopped on the other two. It is the claim of the people that the two checks which were cashed were endorsed as J. Rubin by defendant. Schurgin learning that the cigarettes had been stolen stopped payment on the other two checks, whereupon all the cigarettes remaining unsold were taken away by defendant and his partner, Rifkin. Subsequently they were found and seized by the officers at the house of one McGraw. McGraw and Schneider, alias Kelly, were then arrested for stealing them. It does not appear by the record what the result of the proceedings against them was, but it is stated in defendant's brief that proceedings were taken against them in the police and recorder's court upon the charge of having stolen the property from the business place of August Quandt.

The defense of defendant was that he sold them on a commission for Schneider, alias Kelly, and that he had no knowledge they were stolen. The proofs, however, upon the part of the prosecution showed that the defendant admitted he purchased them from Schneider for $900.

1. The first point raised is that the cigarettes

seized at McGraw's house were not properly identified as the cigarettes which were stolen from Quandt. For the purpose of identifying the cigarettes, Quandt was interrogated as follows:

"*Q.* Did you see your property later, Mr. Quandt?
"*A.* Yes, a good part of it.
"*Q.* Whereabouts?
"*A.* Well, police headquarters some of it, and some of it at the police barns on Fort street, east.
"*Q.* I will ask you to step down, Mr. Quandt, and tell us whether you recognize this case we will call Exhibit 'A.'?
"*A.* Yes, I do recognize it.
"*Q.* What does it contain?
"*A.* Camel cigarettes.
"*Q.* Whose cigarettes are they?
"*A.* Mine."

Witness then testified that he knew the cigarettes were his because he was told by the man who stole them. Upon cross-examination the witness testified:

"*Q.* Have you yourself any means of identifying these cigarettes in this box, if this box contains cigarettes, as being your property?
"*A.* No, sir. There is no difference from lots of other Camels.
"*Q.* You yourself could not possibly identify the contents of this box, if it contains cigarettes, as being your cigarettes?
"*A.* No, sir.
"*Q.* The only reason why you say these are your cigarettes is because some man told you they were yours?
"*A.* Yes. Somebody did steal 36 boxes of cigarettes from my place of business. I received back 160,000 of them. The remainder of 200,000 are still out of my possession."

During the taking of this testimony much controversy was interspersed by court and counsel, the contention of defendant's counsel being that the testimony was not admissible, because he had no basis for his

conclusion. No formal objection to the testimony appears on the record, but subsequently, when the people rested, counsel moved as follows:

"I move, if your honor please, that his testimony— that question and that answer wherein he was asked whether these were his cigarettes, and the answer that they were, be stricken out as based upon hearsay and being a conclusion."

It will be noted that the precise inquiry made of the witness was whether he could identify exhibit "A" which was a case or box, and he replied he could. In reply to defendant's counsel he frankly admitted he could not identify the cigarettes that were in the box because they were similar to other cigarettes of like brand. He might very well be able to identify the case or box which contained the cigarettes and yet be unable to identify the cigarettes for the reason that the cases or boxes had been in his own store, and he had seen them since they were stolen while in the possession of the officers. For this reason the motion to strike out was properly denied. Further complaint is made in this connection of the testimony of Quandt that he knew they were his cigarettes because the man who stole them told him they were. As no objection appears of record, nor is it included in the motion to strike out, we will not consider it. *People* v. *Martin*, 208 Mich. 109. We think the testimony bearing on the identity of the cigarettes taken as a whole was sufficient to support the finding of the jury.

2. It was the theory of the prosecution that J. Rubin was an alias of defendant, and that he received and indorsed the checks which were given him for the cigarettes and which were made payable to J. Rubin. It was the claim of defendant that J. Rubin was an alias of Schneider, one of the parties indicted for stealing the cigarettes. Upon cross-examination defendant denied that the indorsements on the checks were

his own.   The prosecution, in an attempt to show that the indorsement was his, asked him to write his name on a piece of paper and directly under it the name of J. Rubin.   Defendant, without objection, complied with this request.   The prosecution then called an expert and showed that, in his opinion, the name of "J. Rubin" on the checks, and the signature of "J. Rubin" on the paper were written by the same person.   Complaint is made of this testimony because the comparison of the signatures was incompetent and  because Mr. Hampel did not qualify as an expert.   Counsel, to support his argument in this court, cites the following statute, but did not call it to the attention of the trial court:

"Whenever in any suit or proceeding in any of the courts of this State, it shall be necessary or proper to prove the signature or the handwriting of any person, it shall be competent to introduce in evidence for the purpose of comparison, any specimen or specimens of the handwriting or signature of such person, admitted or proved to the satisfaction of the court to be  genuine, whether or not the paper  on which such handwriting or signature appears is one admissible in evidence or connected with the case or not:   *Provided,* That if such paper is not one admissible in evidence for some other purpose, or connected with the case, it shall not be admissible in evidence for the purpose of comparison unless it was made before the controversy arose concerning which such suit or proceeding was brought."   3 Comp. Laws 1915, § 12539.

Quite likely it would have been error to compel the witness, against objection, to make the signatures he did.   (*First National Bank* v. *Robert,* 41 Mich. 709), but we see no occasion for holding it reversible error, when it was done voluntarily and without any objection upon his part, or upon the part of his counsel. But this does not dispose of the question.   Defend-

ant could, if he chose, waive that right without waiving the right to have the paper excluded under the proviso of the statute. When the witness Hampel was recalled for the purpose of comparing the signatures on the checks with those made by defendant in court, counsel objected that the witness had not qualified as an expert. The suggestion of the court to lay a proper foundation was followed and the trial court announced that the witness might answer. Hampel was then asked his opinion as to whether the indorsement of J. Rubin on the checks and the signature "J. Rubin" as made by the defendant were made by the same party. The witness then answered:

"*A.* Do I understand that the man that wrote Abraham Sturman on this exhibit 'D' wrote 'J. Rubin' also?

"*Counsel for Defendant:* Just a moment. I object to that, if the court please. That is not the question he was asked.

"(Question read by reporter.)

"*A.* Exhibit 'D' is the paper written here by Mr. Sturman.

"*Counsel for Defendant:* That is not right. I did not understand the question that way, if the court please.

"*The Court:* Then your objection is withdrawn?

"*Counsel for Defendant:* Yes."

This left the question to be answered without objection. Under these circumstances we must hold that by not interposing an objection his right under the statute to have the paper containing his signature excluded for the purpose of comparison was waived. This conclusion makes further construction of the statute unnecessary.

3. The further question is raised that the witness Hampel did not show himself qualified as an expert on handwriting. The witness testified that he had been working for the Detroit Savings Bank for five

years in its. bookkeeping department. That in his duties he compared 400 or 500 signatures daily, and that he was familiar with various types of handwriting. In view of this testimony the trial court did not err in permitting the witness to testify as an expert.

We are of the opinion that a case was made for the jury and that the trial court was in no error in refusing a new trial on the ground of newly-discovered evidence.

The judgment of conviction is affirmed. .

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK. and SHARPE, JJ., concurred.