PEOPLE v. CAMMARATA.

CRIMINAL LAW—ROBBERY ARMED—EVIDENCE—CALENDAR ENTRIES.
   In prosecution for robbery while armed with dangerous weapon, where calendar entries showing defendant's failure to appear for trial and forfeiture of bail were admitted in addition to other evidence and principal defense is *alibi,* conviction is affirmed, on appeal.

Appeal from Recorder's Court of· Detroit; Van Zile (Donald), J. Submitted October 16, 1931. (Docket No. 217, Calendar No. 35,943.) Decided January 4, 1932. Rehearing denied April 4, 1932.

Frank Cammarata was convicted of robbery armed. Affirmed.

*Frederick B. Brown,* for appellant.

, *Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Edmund E. Shepherd,* Assistant Prosecuting Attorney, for the people.

POTTER, J. Defendant was arrested, informed against, tried, and convicted of having, on July 1, 1925, robbed Frank A. Zeitz of the sum of $2,100, being armed with a dangerous weapon. Zeitz was the teller of a branch of the Peoples Wayne County Bank. The robbery was a robbery of the bank. After conviction a motion for a new trial was made and overruled. Defendant appeals. Defendant contends that during the time he was in custody at St. Louis, Missouri, an officer placed a straw hat upon his head and he was then identified as one of the ·persons participating in the robbery. It is claimed this constituted an invasion of the defendant's constitutional rights. There is no question but defendant is privileged against self-incrimination. Things improperly taken from him may not be used against him in a criminal case if they are taken unlawfully, but this is· subject to many exceptions. The rule is not so broad as to protect a person accused of crime from the production of evidence against him of forged documents, false keys, counterfeit bills, and other incriminating things found in his personal possession upon arrest.

In *People* v. *Wittersheim,* 252 Mich. 538, a doctor who examined defendant's shoulder without objection was permitted to testify to the result of his examination on the authority of *People* v. *Collins,* 223 Mich. 303, and *People* v. *Corder,* 244 Mich. 274.

In *People* v. *Breen,* 192 Mich. 39, defendant was charged with breaking and entering. Tracks were found in the vicinity of the building entered. The officers took defendant's shoes and compared them with the tracks and testified that the shoes fitted the tracks. It was held that the defendant was not thus compelled to furnish testimony against himself.

In *People* v. *Ballard,* 204 Mich. 58, in an attempted rape case, a monthly report of the defendant, a paroled prisoner, to the warden of the prison, was found at the scene of the assault. It was offered in evidence and objected to, but it was held that the admission of this testimony did not constitute proof of another distinct crime and was admissible as a part of the *res gestæ.*

In *People* v. *Sturman,* 209 Mich. 284, the court held that it was quite likely it would have been error to compel the witness, against objection, to sign his name in the presence of the jury (*First National Bank* v. *Robert,* 41 Mich. 709); but that where he voluntarily and without objection made his signature, he thereby waived his constitutional privilege. In this case no objection was made at the time the hat was placed upon the defendant's head, and none at the time the testimony was introduced. We think under the facts there was no invasion of defendant's constitutional privilege against self-incrimination.

Defendant was arrested upon a complaint and warrant made September 8, 1925. He was arraigned on September 22, 1925. On October 28, 1925, a *capias* was issued for the rearrest of the defendant.

His examination was continued through the month of November and until December 22, 1925, when defendant failed to appear. His recognizance was forfeited, and *capias* issued for his arrest, and on January 19, 1926, he was held for trial. Bail was fixed at $25,000 with two sureties. On February 3, 1926, he was arraigned, pleaded not guilty, and the case set for trial February 9, 1926. Bail was fixed at $50,000 with two sureties and was not furnished, and defendant was remanded to the custody of the sheriff. On March 25, 1926, on motion of defendant's counsel and upon consent of the assistant prosecuting attorney, defendant's bail was reduced to $25,000 with one surety. Here the case rested until July 11, 1927, when his recognizance was ordered forfeited and a *capias* issued. But on the next day the order forfeiting the recognizance was set aside and vacated and the cause set for trial July 19, 1927. On July 15, 1927, the cause was continued indefinitely. Nothing appears to have been done in the case during the remainder of 1927 and all of 1928. On September 12, 1930, the cause was continued until September 19, 1930, when defendant's recognizance was again forfeited and *capias* issued. January 26, 1931, defendant having been rearrested, the *capias* issued was ordered canceled and his bail was fixed at $100,000 with one surety. The cause was continued at different times, and on February 20, 1930, trial began. Defendant was convicted and remanded to the custody of the sheriff until February 26, 1931, at which time he was sentenced to State's prison in Jackson for not less than 15 years nor more than 30 years. Upon trial of the case the following occurred:

"If your honor please, I offer the files and records of this case, being the file in the matter of

*People* v. *Frank Cammarata,* No. 60231, for the purpose of showing the record of the bond forfeitures of the defendant.''

*The Court:* ''I guess they are all part of the case. I will receive them.''

*Mr. McCrea:* ''I want the record to show that according to the complaint in this case the defendant was arraigned on September 22, 1925, and that an examination was held and a bond of $25,000, two sureties entered.''

*Mr. Payne:* ''We object to the introduction of the file for the purpose of showing bond forfeitures. I submit that is not material to the issue here. It is part of the records and files in the case, that is true, but as to whether or not there was a forfeiture of the bond, I submit that is not any explanation of guilt or innocence and it has no bearing on the defendant's guilt or innocence.''

*Mr. McCrea:* ''I claim—''

*Mr. Payne:* ''It is just part of the public records. I submit it is not competent.''

*The Court:* ''Objection overruled.''

*Mr. McCrea:* ''I want the record to show that on December 2, 1925, this bond that I have just mentioned was forfeited before Judge Skillman in this court and the defendant's rearrest ordered at that time; that the forfeiture was set aside on July 9, 1926, and the bond reinstated.

''Further, that on July 11, 1927, the day the case was set for trial, the defendant failed to appear and that his bond was again forfeited before Judge Bowles in this court building; later on then again the bond was reinstated.

''Further, that on September 19, 1930, the bond was again forfeited before Judge Boyne on defendant's failure to appear. That judgment was entered on that bond before Judge Cotter of this court on January 11, 1930, and an execution issued attempting to recover the amount of the bond.''

Upon the argument of the case the assistant prosecuting attorney said:

"Now, then, we have shown, and it has been permitted to stand on this record, because this case is an old case; it is of long standing, the time that has passed between July 1, 1925, and February 21, 1931, and it is for that reason the court has permitted the testimony in here, the evidence in here of the bond forfeitures of this defendant, of the number of times when the case was ready for trial, when he was ordered to appear for trial by the court, that he did not appear. And that is important evidence, ladies and gentlemen, because this court will undoubtedly charge you that flight is always evidence of guilt. It is not consistent with innocence. If a man is innocent he does not run. And the people claim he did run on several occasions. They claim he jumped his first bond in St. Louis when the governor had given the State of Michigan permission to bring him back on extradition papers. The people claim he jumped his second bond in this case before one of the judges of this court; and they claim he jumped another one later on, and finally was apprehended and brought here and is now before you ladies and gentlemen on trial. Is that significant testimony in this case? Don't you think that it is some explanation of why this case is tried at this time in this court. If this defendant was innocent, why didn't he appear for trial when ordered to by this court? If he was innocent when he was apprehended in St. Louis on this crime, why did he jump his bond there and the governor of the State of Missouri said, 'The people of the State of Michigan can have this prisoner to take him back and try him in Michigan?' "

It is urged that the ruling of the court permitting the introduction in evidence of the records and files in the case showing the forfeiture of defendant's

recognizance coupled with the argument of the prosecuting attorney constituted error.

Evidence of flight is admissible. Admissibility is justified upon many grounds. "The wicked flee when no man pursueth" is frequently quoted as the scriptural foundation for its admissibility. Man in modern cosmopolitan society, with readily accessible means of rapid transportation, is constantly moving in the regular pursuit of business and pleasure. That one leaves home is of itself no evidence of guilt. If it was, the presumption of guilt would be raised against everyone.

At common law, if one accused of crime subsequently fled, his goods were forfeited and escheated to the crown, "For although he be found not guilty, yet he shall forfeit his goods by the flying." *Foxley's Case,* 5 Coke Rep. 109a, 109b (77 Eng. Repr. 224). The crown was active to protect and augment its revenues. In all cases of flight, crown counsel appointed by the king were bound to bring the matter of flight and consequent forfeiture of goods to the attention of the court. The broad ground upon which such evidence is generally held admissible is not that it is substantive evidence of guilt, but that the acts and conduct of the accused, subsequent to the commission of an alleged offense, are for the consideration of the jury.

"Flight from the scene of a tragedy may be quite as consistent with innocence as with guilt. One, who in self-defense kills or maims another, may through ignorance of the law or through panic flee from the scene of his act, and yet be perfectly innocent. We think it would be a dangerous rule which would permit the jury to consider flight as substantive evidence of guilt." *People* v. *Cismadija,* 167 Mich. 210.

"While not 'substantive evidence of guilt,' *People* v. *Cismadija,* 167 Mich. 210, 215, or sufficient in it-

self to warrant a conviction, it was a proper subject for the consideration of the jury.'' *People* v. *Burbank*, 234 Mich. 600.

''The true rule is, that all acts and facts upon which any reasonable presumption of the truth or falsity of the issue can be founded, may be given in evidence; but such acts or facts must precede or be part of the *res gestæ*, and unless as confessions, or given for the purpose of explanation or qualification, the subsequent acts and statements of the party are never admissible.'' *Dillin* v. *People*, 8 Mich. 357.

There are, of course, many rules of logical relevancy not legally recognized. If flight is evidence of guilt, failure to fly should logically be evidence of innocence. 3 Wigmore on Evidence (2d Ed.), § 1732; but, as said in *People* v. *Cleveland*, 107 Mich. 367:

''I am unable to find any case which permits the person to show a voluntary surrender, after the escape, for such purpose.''

The reason for this rule is one of expediency; to prevent the manufacture of evidence in his own behalf by the defendant.

The question of admissibility of evidence of forfeiture of bail has been considered by other courts. In *State* v. *Kesner*, 72 Kan. 87 (82 Pac. 720), the court quoted the syllabus of *State* v. *Stewart*, 65 Kan. 371 (69 Pac. 335), and then said:

''Failure to appear for trial in accordance with the recognizance is of course not conclusive evidence of flight, but is susceptible of explanation; but it is some evidence of flight, and if so, may be considered with any explanation offered as a circumstance to be considered with all other circumstances as bearing upon the question of the guilt or innocence of the defendant.''

*Jones* v. *State,* 26 Ga. App. 635 (107 S. E. 166), quoted without comment the language above quoted from *State* v. *Kesner, supra.* In some cases proof of forfeiture of a recognizance has been held admissible when connected with other evidence. The rule of *Morgan* v. *Commonwealth,* 14 Bush. (77 Ky.) 106, was commented on by the court in *Saylor* v. *Commonwealth,* 22 Ky. Law Rep. 472 (57 S. W. 614), who, after holding evidence of flight admissible, said:

"It was therefore competent to show that, after giving bond, the appellant left the county and remained absent, and that his bond was forfeited for failure to appear, this conduct being at least to some extent inconsistent with his innocence, though susceptible of explanation, which he attempted to give."

In *State* v. *Seymour,* 7 Idaho, 257 (61 Pac. 1033), evidence that after defendant was arrested and gave bail his bond was forfeited was offered and received. There is a general discussion of the law of evidence in relation to flight. The court said:

"There is an absolute lack or want of legal evidence to sustain the verdict."

In *State* v. *Hart,* 66 Mo. 208, it is said:

"The record does show that defendant forfeited a recognizance for his appearance in this case, but that was the only evidence which tended to show that he had made any attempt to avoid this prosecution. * * * It was admissible to show that when he forfeited his recognizance and left the State, an indictment was pending against him. It was competent for that and for no other purpose, and the jury should have been so informed by the court."

In *State* v. *Middleton,* 104 La. Ann. 233 (28 South. 914), the State offered to show defendant had forfeited his bond and become a fugitive from justice. The court held it might be shown. The only discussion or citation of authorities is in relation to the proof of flight.

In *People* v. *Abbott,* 65 Cal. App. 120 (223 Pac. 77), defendant was convicted of obtaining money by false pretenses. It is said:

"The appellant assigns as error the admission of evidence showing that the bail bond of defendant had been declared forfeited by the court prior to the trial, and that a bench warrant had issued for his apprehension. It is admitted by the appellant that this evidence was offered for the purpose of showing that he had attempted to evade the consequences of a trial by flight, but he contends that the record evidence of the proceedings had by the court prior to the trial of the cause was not admissible for this purpose. Some authorities from other jurisdictions are cited to the point that this evidence was not admissible, as it covered an *ex parte* proceeding had in the absence of the defendant. But in the case before us evidence had previously been offered to show that the defendant had failed to appear at various times when his case was called before the trial court, and that six months after the date upon which his case was set for trial he was arrested in another county after considerable search. It was then shown that he was arrested upon a bench warrant, which was issued by the trial court a few weeks previous to the time when his bail was declared forfeited. The introduction of the evidence relating to the issuance of the bench warrant upon which the appellant was subsequently arrested in another county was clearly admissible as evidence of flight. The evidence relating to the forfeiture of his bail was merely a part of the gen-

eral story and was not prejudicial to the trial of his case."

In *Barron* v. *People,* 73 Ill. 256, the record of the court was admitted in evidence. It is said:

"It appears the object of the State's attorney was, not only to show the prisoner had given bail for his appearance to answer the indictment for larceny, but that he had forfeited the recognizance by his voluntary absence, and further, to show that the bail, although accepted by the court, was 'straw bail' only. This was done to use as an argument against the prisoner—to argue, from these facts, that his fleeing from the prosecution was evidence to be considered by the jury as tending to show guilt. This, taken in connection with the various *aliases* under which the prisoner passed, was matter proper for the consideration of the jury."

In *State* v. *Wingfield,* 34 La. Ann. 1200, it is said:

"The court below did not err in admitting in evidence, on behalf of the State, the appearance bond given by defendant and the judgment of forfeiture thereof for nonappearance. Such evidence falls in the same category with evidence of concealment, flight, etc., as a circumstance open to explanation by the defendant and to be weighed by the jury."

In *State* v. *Cherrington,* 34 S. D. 562 (149 N. W. 421), defendant was convicted of larceny. It is said:

"Over objections of the defendant the trial court received in evidence the court records, showing that defendant had given a recognizance bond with sureties to appear at a prior term of said circuit court, and that defendant failed to appear at such term of court, and that his bond was forfeited by reason thereof. This ruling is assigned as error. We are of the view that there was no error in this ruling. The conduct of a defendant after the time of the

commission of the alleged offense, and his attitude and relation toward such alleged crime, are always relevant. While such conduct may not be sufficient evidence to alone warrant a conviction, still it constitutes a circumstance which the jury have a right to take into consideration in connection with all the other evidence in the case.''

In *Cook* v. *State,* 88 Tex. Crim. Rep. 659 (228 S. W. 213), defendant was arrested and held to bail to await the action of the grand jury. He did not appear. Proof of these facts was held admissible as tending to show flight. There was no forfeiture of bail, and the question here involved was not there considered.

On the other hand, in *Morgan* v. *Commonwealth, supra,* defendant was arrested and tried for murder. The question involved in this case was there involved. It is said:

''The offer of the Commonwealth to prove the conduct of the prisoner in relation to the prosecution, after the indictment was found against him, by showing from the record of the case that he had forfeited his bail-bond and had eluded arrest from 1875 to November, 1877, was properly rejected by the court.''

A similar case was before the supreme court of Oregon in *State* v. *Lee,* 17 Ore. 488 (21 Pac. 455). Defendant was indicted for larceny. It is said:

''The defendant being under recognizance on the third day of December, 1887, he failed to appear when called, and his default was entered of record in the cause. Upon the trial of this cause, as a circumstance to prove flight, the district attorney offered in evidence the record of the defendant's default on that occasion. This is also thought to be error, for the reason that there was no issue in the case as to whether or not, on that day, the defend-

ant made default or not. The issue was one of guilt or innocence of the accused, and for that issue the record was incompetent."

In *Sorrell* v. *State,* 74 Tex. Crim. Rep. 505 (169 S. W. 299), exception was taken to the admission in evidence at the instance of the State of a judgment *nisi,* rendered in January, 1913, declaring a forfeiture of appellant's bond for his failure to appear for trial. It is said:

"Evidence of flight is ordinarily accepted as an indication of guilt and is admissible. So, also, upon the same theory, would be evidence showing or tending to show that appellant had intentionally absented himself from court in order to avoid a trial of his case. The judgment *nisi,* however, was an *ex parte* proceeding, having no legal weight or effect except in the matter of the bond forfeiture and legally establishing no conclusion. For these reasons it should not have been admitted. It was taken in the absence of the accused, without an opportunity on his part to be heard on the issue. It was not and could not have been a final adjudication of any fact, and was, therefore as stated, not admissible. The State, upon this issue, should be confined to evidence of the defendant's flight or intentional absence and should not be permitted to bolster the same up by an *ex parte* proceeding of the court."

There are constitutional and statutory rules governing evidence in criminal cases. The Constitution provides the defendant has a right to be confronted with the witnesses against him (Const. art. 2, § 19), and by statute he has a right to meet them face to face. (3 Comp. Laws 1929, § 17129). The accused is surrounded with the presumption of innocence, and the burden is upon the people to prove beyond a reasonable doubt defendant's guilt. But this does not authorize the manufacture of evidence by the people

any more than by defendant. In this case the calendar entries made presumably by the clerk of the court or some employee of the clerk were read in evidence by the prosecuting attorney. Though these calendar entries are required to be kept, they were not made or authenticated by the court. They constituted no part of the regular docket. The person who made the calendar entries was not produced. They were not authenticated in any way. No one testified to their correctness. The defendant had no opportunity to confront the person who made them—to meet him face to face or to cross-examine him—and the right of cross-examination has been regarded as an essential condition to the admissibility of the testimony of any witness. These calendar entries were mere *ex parte* statements made after the offense charged was committed, in the absence of defendant, by someone not produced as a witness, which were offered in evidence and read by the prosecuting attorney against objection without authentication, confrontation, or opportunity for cross-examination. They were entries made long after the commission of the alleged offense, and were not of themselves competent evidence as presented in this case, where, over objection by defendant, they were read by the prosecuting attorney without anyone swearing to their correctness or their authenticity.

The principal defense relied upon was an *alibi.* It was claimed defendant was at the cottage of Sam Valenti at Fairhaven when the crime was committed. On the afternoon of the day the offense was committed a police officer went to Valenti's cottage in search of defendant. Defendant was not there. Valenti was sworn as a witness for the defense. He testified defendant was absent a short time in the afternoon of that day; that on his return he told

defendant the officer had been looking for him; that defendant left Valenti's about eight o'clock that night and he did not see him again for some time, though witness knew the officers were looking for defendant.

Standing alone, evidence of bail forfeiture would not be admissible. In view of defendant's flight and arrest, which was not disputed, it was admissible as showing defendant's subsequent conduct indicating consciousness of guilt. All the files and records of the case were introduced by the prosecuting attorney. It was not error for him to emphasize that testimony most favorable to the people. Counsel for defendant were privileged to comment upon any part of the record and files so introduced. On motion for new trial, defendant claimed the verdict was against the great weight of evidence, and material evidence had been newly discovered. The issue of fact was between the testimony of a casual passerby, at the time of the robbery, who identified defendant as one of the robbers and that of a single *alibi* witness. This issue was for the jury. Defendant presented, in support of his motion for a new trial, the affidavits of three men in support of his *alibi*. Defendant gave no excuse for not calling these witnesses on the trial, except that he was in jail and could not obtain them. This evidence was cumulative. No showing of diligence was made. The court did not abuse its discretion in refusing a new trial. Conviction affirmed.

Clark, C. J., and Sharpe and Fead, JJ., concurred with Potter, J. McDonald, North, Wiest, and Butzel, JJ., concurred in the result.