PEOPLE v BIEGAJSKI

Docket No. 52927. Submitted July 21, 1982, at Detroit.—Decided November 19, 1982. Leave to appeal denied, 417 Mich 1080.

Defendant, John W. Biegajski, was convicted by a jury in the Wayne Circuit Court, Charles S. Farmer, J., of first-degree criminal sexual conduct, cruelty to a child, and torture of a child. He was sentenced to concurrent terms of 4-1/2 to 12 years on the criminal sexual conduct count, 2 to 4 years on the child cruelty count, and 4 to 10 years imprisonment on the child torture count. Defendant appeals alleging several errors. *Held:*

1. The trial court did not err by allowing an arresting officer to testify that the defendant attempted to hide from the arresting officers and lied to them about his identity. Evidence of an attempt to avoid arrest and flight in a criminal case is relevant, material, admissible, and can lead to an inference of guilt.

2. The convictions of both child cruelty and child torture did not violate the prohibition against multiple punishment for one offense since each offense required proof of a fact which the other did not require.

3. Since the Legislature chose to use the word punishment in the child cruelty statute only, a punishment motive is not part

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 228.

[2, 3] 21 Am Jur 2d, Criminal Law § 244.

[3] 21 Am Jur 2d, Criminal Law § 551.

[4, 5, 8] 42 Am Jur 2d, Infants § 16 *et seq.*

59 Am Jur 2d, Parent and Child § 24.

Validity and construction of penal statute prohibiting child abuse. 1 ALR4th 38.

Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.

[6-8] 21 Am Jur 2d, Criminal Law §§ 15, 17.

16A Am Jur 2d, Constitutional Law § 818.

[9] 29 Am Jur 2d, Evidence § 249 *et seq.*

Conviction of criminal offense without evidence as denial of due process of law. 80 ALR2d 1362.

[10] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

of the child torture statute, but rather "torture", in terms of the statute, refers to the infliction of violent bodily pain upon a child to satisfy sadistic motives. The Legislature intended the child torture statute to apply to instances of sadism or vileness, where the "parent or guardian or person under whose protection or control any child may be" inflicts pain for purposes other than punishment.

4. The child torture statute is not unconstitutionally vague because of its failure to define the word "torture". A reading of the statute would not cause people of common intelligence to speculate as to its meaning.

5. The evidence presented at trial was sufficient to justify a trier of fact in reasonably concluding that the defendant was guilty of child torture beyond a reasonable doubt.

6. Any error in the trial court's instructions on the child cruelty charge, if error exists, was not of such magnitude as to create manifest injustice.

7. The trial court in its instructions included torture within the elements of child cruelty and, thus, did not separate the offenses sufficiently for the jury to know that child torture and child cruelty each require proof of a fact that the other does not require. Therefore, the conviction and sentence on the child cruelty offense were vacated. The convictions and sentences on the first-degree criminal sexual conduct and child torture counts were affirmed.

Affirmed in part, reversed in part.

1. CRIMINAL LAW — EVIDENCE — AVOIDING ARREST — FLIGHT — INFERENCES.

Evidence of an attempt to avoid arrest and flight in a criminal case is relevant, material, admissible, and can lead to an inference of guilt.

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The double jeopardy prohibitions of the United States and Michigan Constitutions are not violated where a criminal defendant is convicted of both child cruelty and child torture since each offense requires proof of a fact which the other does not require (US Const, Am V; Const 1963, art 1, § 15; MCL 750.136, 750.136a; MSA 28.331, 28.331[1]).

3. CONSTITUTIONAL LAW — MULTIPLE PUNISHMENTS — SINGLE TRANSACTIONS.

Separate sanctions for multiple offenses arising in the course of a

single act or transaction may be imposed where each offense requires proof of a fact which the other does not require.

4. CRIMINAL LAW — CHILD CRUELTY.

The elements of the offense of cruelty to a child are: (1) the defendant was an individual, such as a parent, guardian, or camp counselor, who was responsible for the protection of a child, and (2) the defendant punished the child in a cruel and unlawful manner (MCL 750.136; MSA 28.331).

5. CRIMINAL LAW — CHILD TORTURE.

The infliction of torture upon a child is an element of the offense of child torture; "torture", in terms of the statute, refers to the infliction of violent bodily pain upon a child to satisfy sadistic motives; the statute applies to instances of sadism or vileness where the parent or guardian or person under whose protection or control any child may be inflicts pain for purposes other than punishment (MCL 750.136a; MSA 28.331[1]).

6. CRIMINAL LAW — STATUTES — DUE PROCESS — VAGUENESS.

A criminal statute may be challenged for vagueness on three grounds: (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; (3) its coverage is overbroad and impinges on First Amendment freedoms.

7. CRIMINAL LAW — STATUTES — DUE PROCESS — VAGUENESS.

A statute violates the first essential of due process of law where it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.

8. CRIMINAL LAW — CHILD TORTURE — CONSTITUTIONAL LAW — VAGUENESS.

The statute pertaining to child torture is not unconstitutionally vague since a reading of the statute would not cause people of common intelligence to speculate as to its meaning (MCL 750.136a; MSA 28.331[1]).

9. CRIMINAL LAW — DUE PROCESS — EVIDENCE — REASONABLE DOUBT.

In determining whether a conviction was based on sufficient evidence, a court must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

10. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

The Court of Appeals generally will not reverse a trial court as a result of an error in jury instructions where no objection to the instructions was raised at trial; jury charges are assessed in their entirety and unobjected to error is not ground for reversal except upon a showing of manifest injustice, or if the charge omits an essential component of an offense.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Derrick A. Carter),* for defendant on appeal.

Before: T. M. BURNS, P.J., and BEASLEY and C. W. SIMON, JR.,* JJ.

PER CURIAM. On April 10, 1980, defendant, John William Biegajski, was convicted as charged by a Wayne County jury of first-degree criminal sexual conduct, in violation of MCL 750.520b(1); MSA 28.788(2)(1), cruelty to a child, in violation of MCL 750.136; MSA 28.331, and torture of a child, in violation of MCL 750.136a; MSA 28.331(1). After being sentenced to not less than 4-1/2 years nor more than 12 years on the criminal sexual conduct count, not less than 2 years nor more than 4 years on the child cruelty count, and not less than 4 years nor more than 10 years on the child torture count, the sentences to be served concurrently, defendant appeals his convictions as of right.

The victim, the son of defendant's 18-year-old girlfriend, was two years old at the time of the offenses. After living together at various residences

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for about five months, defendant, the child, and the child's mother moved to a Westland home in November of 1979. Soon thereafter, defendant, although not the child's father, began to administer discipline in the form of severe beatings and slappings.

The victim's mother testified that defendant exercised control over her son. She stated that defendant would vent his anger by assaulting the child and that these incidents occurred between November 15 and December 22, 1979.

At some point during the five-week period at the Westland home, the child's mother discovered that her son inadvertently had cut his penis while zipping up his pajamas. When she attempted to apply ointment to the wound, defendant interfered and applied his own "treatment", which consisted of having the child lie naked on the bathroom floor while defendant poured rubbing alcohol over the child's penis and groin area. Repeated dousings of alcohol resulted in the formation of scabs and chemical burns on the child's penis, scrotum, and groin area.

Also testifying at trial was the parties' physician, D. F. Hopkins. Dr. Hopkins testified that his examination of the child during the latter portion of December 1979, revealed that the child sustained chemical burns on the penis and inner thighs, as well as bruises on the abdomen, ear, buttocks, back, and chest. Upon further examination, Dr. Hopkins discovered that an object had been inserted into the victim's rectum, causing a tearing of the sphincter muscle and damage to the anal area.

On appeal, defendant raises five issues. First, he maintains that the trial court erred by allowing an arresting officer to testify, over defense counsel's

objection, concerning the facts surrounding defendant's arrest on January 6, 1980.

The arresting officer, Lennis Hayes, testified that when he and his partner arrived at defendant's residence to effect the arrest, they discovered that defendant was hiding from them in the basement. When the officers informed defendant that they had a warrant for John Biegajski's arrest, defendant lied to them about his identity. In testifying regarding the events surrounding the arrest, defendant explained that he concealed himself from the officers because he thought they were investigating him regarding a stolen automobile.

The trial court gave the following charge to the jury concerning the foregoing incident:

"Members of the jury, there has been some evidence that the defendant attempted to hide immediately before he was arrested. You should first determine whether you believe the testimony and whether you believe that such testimony establishes that the defendant was running away or either hiding. Such evidence is not enough to convict or prove that the defendant committed a crime. It may point to panic, mistake, or fear equally as well. It is, however, a circumstance which you may consider in weighing the evidence in which you may find shows a consciousness of guilt."

The trial court did not err by allowing Officer Hayes to testify pertaining to defendant's secretive actions during the arrest. Evidence of an attempt to avoid arrest and flight in a criminal case is relevant, material, admissible, and can lead to an inference of guilt.[1]

Defendant next claims that conviction of both child cruelty and child torture violates the double

---

[1] *People v Cammarata,* 257 Mich 60, 66; 240 NW 14 (1932); *People v Cipriano,* 238 Mich 332, 336; 213 NW 104 (1927); 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 420, pp 639-640.

jeopardy prohibitions of the United States[2] and Michigan Constitutions.[3] Defendant asserts that the two convictions were based on the same acts and, consequently, he was subjected to multiple punishment for one offense.

Among other things, the Fifth Amendment guarantee against double jeopardy safeguards against multiple punishments for the same offense.[4] In *Iannelli v United States*,[5] the Supreme Court set forth the test applicable to multiple punishments:

> "The test articulated in *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact which the other does. not.' * * * As *Blockburger* and other decisions applying its principle reveal, * * * the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. See *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958). We think that the *Blockburger* test would be satisfied in this case. The essence of the crime of conspiracy is agreement, * * * an element not contained in the statutory definition of the § 1955 [18 USC 1955] offense. In a similar fashion, proof of violation of § 1955 requires establishment of a fact not required for conviction for conspiracy to violate that statute. To establish violation of § 1955 the prosecution must prove that the defendants actually did 'conduct, finance, man-

---

[2] US Const, Am V.

[3] Const 1963, art 1, § 15.

[4] *North Carolina v Pearce,* 395 US 711, 719; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

[5] 420 US 770, 785, fn 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975).

age, supervise, direct, or own all or part of an illegal gambling business.' § 1955(a). The overt act requirement in the conspiracy statute can be satisfied much more easily. Indeed, the act can be innocent in nature, provided it furthers the purpose of the conspiracy." (Citations omitted.)

MCL 750.136; MSA 28.331, the child cruelty statute, provides in pertinent part:

"Any parent or guardian or person under whose protection any child may be, who cruelly or unlawfully punishes, or wilfully, unlawfully or negligently deprives of necessary food, clothing or shelter, or who wilfully abandons a child under 16 years of age, or who habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person, or causes or permits him or her to engage in any occupation that will be likely to endanger his or her health, or deprave his or her morals or who habitually permits him or her to frequent public places for the purpose of begging or receiving alms, or to frequent the company of or consort with reputed thieves or prostitutes, or by vicious training depraves the morals of such child, shall, upon conviction, be deemed guilty of a felony."

MCL 750.136a; MSA 28.331(1), the child torture statute, provides:

"Any parent or guardian or person under whose protection or control any child may be, who tortures such child, shall be guilty of a felony and may be punished by imprisonment for not more than 10 years."

The elements of the offense of cruelty to a child under the portion of the statute with which defendant was charged are (1) defendant was an individual, such as a parent, guardian, or camp counselor,

who was responsible for the protection of a child, and (2) defendant punished the child in a cruel or unlawful manner.

The child torture statute, unlike the child cruelty statute, does not contain the word "punish". Rather, the infliction of torture upon a child constitutes the offense of child torture. Since the statute does not define "torture", we construe the word "according to the common and approved usage of the language".[6]

Black's Law Dictionary defines torture as "the infliction of violent bodily pain upon a person".[7] Torture also has been defined as "the infliction of intense pain (as from burning, crushing, or wounding) to punish, coerce, or afford sadistic pleasure".[8]

In view of the fact that the Legislature chose to use the word punishment in the child cruelty statute only, we hold that a punishment motive is not part of the child torture statute, but rather "torture", in terms of the statute, refers to the infliction of violent bodily pain upon a child to satisfy sadistic motives. We conclude that the Legislature intended the child torture statute to apply to instances of sadism or vileness, where the "parent or guardian or person under whose protection or control any child may be" inflicts pain for purposes other than punishment.

The prosecutor based the child torture count on defendant's administering of rubbing alcohol to the victim's penis and defendant's removal of the resulting scabs. The abuse of the victim by way of repeated beatings was charged to defendant under the child cruelty statute. The trial judge instructed the jury on the child torture count as follows:

[6] MCL 8.3a; MSA 2.212(1).

[7] Black's Law Dictionary (4th ed), p 1661.

[8] Webster's Seventh New Collegiate Dictionary, p 934.

"I gave you members of the jury the three counts and I gave you the definition of cruelty, however, I don't think I gave you the definition of torture. The third count is that the defendant then and there the person under whose protection of a certain child, to-wit: David Nelson, said child being David Nelson, age two, then and there unlawfully tortured the said David Nelson. Torture, members of the jury, as been defined, and you may accept the definition from the court, that it is the infliction of violent bodily harm or pain upon a person by another. The statute reads that any person so doing is guilty of violating the laws—the criminal laws of this state."

In light of the foregoing analysis, we hold that convictions of both child cruelty and child torture do not violate the prohibition against multiple punishment for one offense, since each offense requires proof of a fact which the other does not require.

Defendant also claims that the statute which prohibits torture of a child is unconstitutionally vague. In *People v Howell*,[9] the Supreme Court delineated three grounds upon which a statute may be challenged for vagueness:

"1. It does not provide fair notice of the conduct proscribed.

"2. It confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed.

"3. Its coverage is overbroad and impinges on First Amendment freedoms." (Footnote omitted.)

Defendant claims the child torture statute is violative of the first two prongs of the *Howell* test because the statute does not define the word "torture".

_____

[9] 396 Mich 16, 20; 238 NW2d 148 (1976).

The standard employed for ascertaining whether a criminal statute is void for vagueness was enunciated in *Lanzetta v New Jersey:*[10]

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

In *People v Goulding,*[11] the Court discussed criminal statutes:

"Statutes defining crimes are to be strictly construed. They must prescribe with reasonable certainty the elements of the offense. 12 CJ, p 1203. They ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. *United States v Brewer,* 139 US 278; 11 S Ct 538; 35 L Ed 190 (1891); *Commonwealth v Atlas,* 244 Mass 78; 138 NE 243 (1923); *United States v Sharp,* 27 Fed Cas 1041 (1815). The legislature must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain rule of conduct. 8 RCL 58.

"Criminal statutes must so clearly define the acts upon which the penalty is denounced that no ordinary person can fail to understand his duty and the departure therefrom which the law attempts to make criminal. *Brown v State,* 137 Wis 543; 119 NW 338 (1909)."

Here, the trial judge determined the ordinary meaning of the word "torture" by consulting a dictionary. The word "torture" has a common, ordinary meaning to the extent that the child torture statute furnished adequate notice to defendant that the repeated application of rubbing alcohol to a two-year-old's penis is proscribed conduct.

[10] 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939).
[11] 275 Mich 353, 358-359; 266 NW 378 (1936).

We, therefore, conclude that the child torture statute is not unconstitutionally vague, as the reading of the statute would not cause people of common intelligence to speculate as to its meaning.

Defendant also argues that his conviction for child torture should be reversed because there was insufficient evidence presented at trial. We disagree. The evidence presented on this charge was sufficient to justify a trier of fact in reasonably concluding that defendant was guilty beyond a reasonable doubt.[12]

Lastly, defendant claims that the trial court's instructions on the child cruelty charge unconstitutionally shifted the burden of proof to defendant. Concerning this offense, the trial judge gave the following jury charge:

"As far as the cruelty to children, the statute provides that a parent, or guardian, or person under whose protection any child may be, who cruelly or unlawfully punishes, or wilfully, unlawfully, or negligently deprives of necessary food, clothing or shelter, et cetera, shall be guilty of a crime.

"In providing punishment for any person who cruelly or unlawfully punishes any child intended to include all cases of an unreasonable and unlawful punishment of any child.

"Members of the jury, courts do not and should not constitute themselves as the overseer of a household. The welfare of a child is the principle ground on which the parental right to chastise him is found and where the punishment inflicted is so excessive and cruel as to show beyond a reasonable doubt that the protector, or person, or the parent was not acting in good faith for the benefit of the child, but to satisfy his own ego passion, he is no longer to be considered as a judge administering the law of the household, but as a mal-

---

[12] *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

factor guilty of any or an unlawful assault on a helpless person who has been entrusted to his care or entrusted to his protection. Therefore, to maim a child, or to endanger his life or health, or to severely beat him in an improper fashion, or with a dangerous instrument, although no permanent injury be given, or to subject him to unusual forms of physical torture, or to whip him with such excessive severity as implies the absence of due appreciation of that protecting duty, or either that parental duty, they are acts which in themselves bespeak evil intent and a person guilty of excess will not be heard to say that he thought he was acting for the benefit of the child."

Defendant failed to object to the allegedly improper instructions. As a general rule, this Court is reluctant to reverse a trial court as a result of an error in jury instructions where no objection was raised at trial.[13] Failure to object at trial precludes immediate correction. Jury charges must be assessed in their entirety and, if there is error, it is not a ground for reversal absent an objection at trial, except upon a showing of manifest injustice, or if the charge omits an essential component of an offense.[14]

In reviewing the challenged instruction along with the other instructions, we find that even if error exists, it is not of such magnitude as to create manifest injustice. The trial court did not appear to be aware of the new proposed CJI 17:8:01.[15] Furthermore, the child cruelty charge

[13] GCR 1963, 516.2; MCL 769.26; MSA 28.1096; *People v Anglin,* 111 Mich App 268, 285; 314 NW2d 581 (1981).

[14] See *People v Elmore,* 94 Mich App 304, 307; 288 NW2d 416 (1979); 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 564-567.

[15] We note that proposed CJI 17:8:01 was approved by the Michigan State Bar Special Committee on Standard Criminal Jury Instructions on November 16, 1979, but never adopted as such by the Supreme Court. Since this case was tried in April, 1980, and since the supplement for filing was dated "6/80", it would not seem the trial judge had received his copy at the time of trial.

was taken in part from language approved of in *People v Green.*[16]

However, the trial judge included "torture" within the elements of child cruelty when he stated:

"Therefore, to maim a child, or to endanger his life or health, or to severely beat him in an improper fashion, or with a dangerous instrument, although no permanent injury be given, *or to subject him to unusual forms of physical torture,* or to whip him with such excessive severity as implies the absence of due appreciation of that protecting duty, or either that parental duty, they are acts which [constitute the offense of child cruelty]." (Emphasis added.)

By including torture as an act which constitutes child cruelty, the trial court did not separate the offenses sufficiently for the jury to know that child torture and child cruelty each require proof of a fact that the other does not require. We cannot determine whether the jury returned a guilty verdict on the child cruelty charge on the basis of acts of torture or other acts.

Therefore, as a consequence of the act of torture being included in the trial court's child cruelty instruction, we vacate defendant's conviction and sentence on the child cruelty offense. The convictions and sentences on the first-degree criminal sexual conduct and child torture counts are affirmed.

Affirmed in part, reversed in part.

---

[16] 155 Mich 524, 532-533; 119 NW 1087 (1909).