PEOPLE v ROBBINS

Docket No. 65219. Submitted July 19, 1983, at Lansing.—Decided
    January 3, 1984.
        Defendant, Bruce D. Robbins, was convicted following a jury trial
        in the Oakland Circuit Court of kidnapping and possession of a
        firearm during the commission of a felony. The trial court,
        Hilda R. Gage, J., sentenced defendant to consecutive prison
        terms of from 8 to 30 years and 2 years. Defendant appeals
        alleging several errors. *Held:*
            1. Under the circumstances presented here, the trial court's
        instructions were adequate to convey the essential elements of
        the crime of kidnapping and presented no manifest injustice.
        The lack of an instruction on movement merely incidental to
        an underlying lesser or co-equal offense is supported by the fact
        that the trial court found that there was no evidence of any
        such offense.
            2. The evidence, when viewed in the light most favorable to
        the prosecution, was sufficient to justify a rational trier of fact
        in concluding that the essential elements of the crimes of
        kidnapping and possession of a firearm during the commission
        of a felony were proven beyond a reasonable doubt.
            3. It was not error for the trial court to permit the prosecu-
        tion to impeach the victim with evidence of her prior inconsis-
        tent statements because the victim was a res gestae witness
        whom the prosecutor was obligated to call.
            4. The victim's fear of a perjury prosecution led to her

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[2] 1 Am Jur 2d, Abduction and Kidnapping §§ 11, 14.
    Necessity and sufficiency of showing, in kidnapping prosecution,
        that detention was with intent to "secretly" confine victim. 98
        ALR3d 733.
[3] 1 Am Jur 2d, Abduction and Kidnapping § 9.
    Seizure or detention for purpose of committing rape, robbery, or
        similar offense as constituting separate crime of kidnapping. 43
        ALR3d 699.
[4] 5 Am Jur 2d, Appeal and Error § 883.
    29 Am Jur 2d, Evidence § 225.
[5] 1 Am Jur 2d, Abduction and Kidnapping § 11 *et seq.*
[6] 81 Am Jur, Witnesses § 518.

invocation of the privilege against self-incrimination and her refusal to testify as a defense witness. The decision not to testify further was free and voluntary, based on an accurate appraisal of her legal situation. The circumstances here were not analogous to those found by the United States Supreme Court to amount to the prevention of a free and voluntary choice by a witness whether to testify and thus did not deprive the defendant of his right to present evidence in his defense.

Affirmed.

1. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

The Court of Appeals will not reverse a defendant's conviction on the basis of an alleged defective jury instruction which was not objected to at trial unless the instruction omitted an essential element of the offense or presents manifest injustice.

2. KIDNAPPING — JURY INSTRUCTIONS — SECRET CONFINEMENT — ASPORTATION.

Secret confinement of a person without movement of the person may supply an alternative to the asportation element necessary for a conviction for kidnapping; it is unnecessary for a trial court to instruct on the element of secret confinement where the prosecution relies on the element of asportation (MCL 750.349; MSA 28.581).

3. KIDNAPPING — ASPORTATION — OTHER CRIMES.

The movement necessary to satisfy the element of asportation in a kidnapping must not be merely incidental to the commission of an underlying lesser or co-equal crime other than an underlying crime involving murder, extortion, or taking a hostage (MCL 750.349; MSA 28.581).

4. CRIMINAL LAW — EVIDENCE.

Evidence is sufficient to sustain a defendant's conviction if, viewed in the light most favorable to the prosecution, it would justify a rational trier of fact in concluding that the essential elements of the crime were proven beyond a reasonable doubt.

5. KIDNAPPING — ELEMENTS OF KIDNAPPING.

A kidnapping may be proven where the following elements are shown: (1) the victim was forcibly or secretly confined or imprisoned; (2) the confinement or imprisonment was against the will of the victim; (3) during such confinement or imprisonment, the victim must have been moved from one place to another for the purpose of abduction or kidnapping, and not for the purpose of some crime other than one involving murder, extortion, or taking a hostage; and (4) the confinement or

imprisonment must have been committed wilfully, maliciously, and without lawful authority (MCL 750.349; MSA 28.581).

6. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — PROSE-CUTING ATTORNEYS — IMPEACHMENT.

A prosecutor may impeach a res gestae witness whom he is required to produce at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Robert F. Davisson,* Assistant Prosecuting Attorney, for the people.

*Roy N. Gruenburg,* for defendant on appeal.

Before: BEASLEY, P.J., and ALLEN and G. R. DE-NEWETH,* JJ.

PER CURIAM. After a jury trial, defendant was convicted of kidnapping, MCL 750.349; MSA 28.581, and of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to imprisonment for consecutive terms of from 8 to 30 years and 2 years, and he appeals as of right.

I

Defendant first argues that the trial court's instructions to the jury defining the crime of kidnapping were defective. No objection was made to the instructions at issue, and under such circumstances this Court will not reverse defendant's conviction unless the instructions omitted an essential element of the offense or present manifest injustice. See, for example, *People v Biegajski,* 122 Mich App 215, 227; 332 NW2d 413 (1982).

* Circuit judge, sitting on the Court of Appeals by assignment.

It was unnecessary for the trial court to instruct on the element of secret confinement, because the prosecution relied instead on the alternate element of asportation. See *People v Phillips,* 112 Mich App 98, 109; 315 NW2d 868 (1982). The movement necessary to satisfy the element of asportation must not be merely incidental to the commission of an underlying lesser or co-equal crime other than an underlying crime involving murder, extortion, or taking a hostage. *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973); *People v Barker,* 411 Mich 291; 307 NW2d 61 (1981).

Here, the instruction given on asportation was as follows:

"[D]uring the course of such confinement, the defendant must have forcibly moved the victim or caused her to be moved from one place to another for the purpose of abduction and kidnapping."

The instructions given made no reference to underlying lesser or co-equal offenses. Two panels of this Court have reached opposite conclusions as to the sufficiency of similar instructions where, as here, no objection was made by defendant. Compare *People v Charles Thompson,* 117 Mich App 522, 525; 324 NW2d 22 (1982), with *People v Alexander,* 118 Mich App 112, 115-116; 324 NW2d 550 (1982). However, on this record, we need not resolve this controversy.

Both *Charles Thompson* and *Alexander* involved defendants who were charged with underlying lesser or co-equal offenses. Here, defendant was originally charged with the co-equal offense of assault with intent to commit murder, MCL 750.83; MSA 28.278. However, at the close of the

prosecution's proofs, the trial court granted defendant's motion for a directed verdict on that charge and declined to permit the prosecution to amend the information to charge defendant with a lesser assault. In so ruling, the trial court held that there was insufficient evidence to enable a rational trier of fact to conclude that any assault took place. In *People v Rappuhn,* 78 Mich App 348, 354-355; 260 NW2d 90 (1977), the Court held that it was necessary to instruct on movement merely incidental to an underlying lesser or co-equal offense even if no such offense was charged. However, in *Rappuhn* there was evidence before the jury suggesting that an uncharged offense had been committed. Here, after the directed verdict, no one suggested that any underlying lesser or co-equal offense could be found to have been committed, and there was no evidence of any such offense. Under such circumstances, an instruction on movement merely incidental to some unspecified underlying offense could only lead to confusion; it could not aid the jury in accurately resolving the kidnapping charge. Under the circumstances presented here, the instruction given by the trial court was adequate to convey the essential elements of the crime and presented no manifest injustice.

We note that our resolution of this issue is consistent with the directions given for use of CJI 19:1:01, the instruction dealing with movement merely incidental to an underlying lesser or co-equal offense. Use Note (1) for that instruction states in part:

"Not to be used where there is no underlying crime possibility or where the underlying crime is murder, extortion, or taking a hostage."

## II

Defendant also argues that the evidence was insufficient to sustain his convictions. Evidence is sufficient to sustain a conviction if, viewed in the light most favorable to the prosecution, it would justify a rational trier of fact in concluding that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). The pertinent portion of the kidnapping statute, MCL 750.349; MSA 28.581, provides:

"Any person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will * * * shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years."

The form of kidnapping relied upon by the prosecution here has four elements:

(1) The victim must have been forcibly or secretly confined or imprisoned.

(2) The confinement or imprisonment must have been against the will of the victim.

(3) During the course of such confinement or imprisonment, the victim must have been moved from one place to another for the purpose of abduction or kidnapping, and not for the purpose of some crime other than one involving murder, extortion, or taking a hostage. See *People v Adams, supra.*

(4) Confinement or imprisonment of the victim must have been committed "wilfully, maliciously and without lawful authority"; that is, it must have been committed intentionally and without legal justification or excuse. See the Court of Ap-

peals opinions in *People v Adams,* 34 Mich App 546, 556-557; 192 NW2d 19 (1971), and *People v Jones,* 92 Mich App 100, 107; 284 NW2d 501 (1979).

Defendant's argument concerning the sufficiency of the evidence is based primarily on the testimony of the victim. The victim was compelled to testify after the trial court rejected her attempts to assert the spousal privilege and the privilege against self-incrimination and despite her assertion that she feared for her life. According to the victim, she had car trouble and was forced to abandon her car on Hamlin Road. Two men offered her a ride, and she accepted, but the men drove her around for several hours rather than taking her to a gas station as she requested. Eventually, she persuaded the men that she had no money and they released her at a gas station at the intersection of Rochester and Tienken Roads. The victim denied that defendant was one of the men involved, denied that any struggle took place on Hamlin Road, and denied making statements to the police. However, the victim testified that she had received telephoned threats that she would be killed if she testified.

Other testimony indicated that a blue and white 1977 Pontiac Grand Prix registered in the name of the victim or her husband was found abandoned on Hamlin Road. A passenger door was open, the keys were in the ignition, and a purse containing the victim's driver's license and $1,723.60 in cash was found on the back seat of the car. Three .22 caliber shells, one of which had been fired, were found on the ground near the car.

Two witnesses who lived on Hamlin Road testified. One saw a blue car parked in the street from which a man and a woman exited. The woman was

forced back into the car after a struggle. Another person must have been in the car, because it backed up and drove away with the victim and her assailant inside. The witness later saw the blue car parked in the same place with its door open. The car was identified as that of the victim. The man who struggled with the woman was described as wearing a black coat and blue pants and was identified as defendant. The woman was described as wearing a striped multi-colored shirt but was not identified.

The other Hamlin Road witness testified that she heard two shots and went to her window. She saw a woman running away from a man with a gun in his hand. The man caught the woman while another man drove up in a gold car with damage on one side. The man and the woman got into the car. The man, who was described as wearing a black coat and black pants, was identified as defendant. The woman was described as wearing a striped multi-colored sweater. It is not clear whether this witness identified the woman involved as the victim; however, the record shows that an attempted identification took place at an afternoon session of the court and that another woman was present in the courtroom who resembled the victim, who wore her hair like the victim, and who was wearing the dress the victim wore to the court's morning session.

The victim had been reported missing and was found, in a visibly excited condition, at a gas station at the intersection of Rochester and Tienken Roads. She was wearing a multi-colored sweater when found. Defendant was found at the intersection of Washington and Carter Streets, near Tienken Road, in the company of another man and with a broken-down brown Chrysler Cor-

doba with damage to one side. Defendant was wearing a dark jacket and dark pants. One witness observed a woman resembling the victim · and wearing a striped multi-colored sweater about 40 yards away from where defendant's car was broken down. The woman was walking quickly away from defendant while looking back and defendant appeared to be saying something to her. The intersection of Washington and Carter Streets is about two miles from the intersection of Rochester and Tienken Roads.

When arrested, defendant was found to have in his possession a slip of paper on which the license number and make of the victim's car were written.

The foregoing evidence, viewed in the light most favorable to the prosecution, was sufficient to justify a rational trier of fact in concluding that the essential elements of the crime were proven beyond a reasonable doubt. A rational trier of fact need not have believed the victim's testimony. The testimony of the two Hamlin Road witnesses and the slip of paper found on defendant's person were sufficient to identify defendant as the perpetrator. That the victim was the woman seen on Hamlin Road and near the scene of the breakdown of defendant's car may be inferred from the involvement of the victim's car in the crime and the testimony concerning the distinctive striped multi-colored sweater. A forcible confinement against the will of the victim may be inferred from the testimony of the Hamlin Road witnesses and from the circumstances that the victim's car was found unlocked, with the key in the ignition, and with a substantial sum in cash in her purse left on the back seat. The testimony showed that the victim was moved during the course of her confinement and supported an inference that the move-

ment was for the purpose of abduction or kidnapping. As has been seen, there was no evidence that the movement was for the purpose of some other crime other than one involving murder, extortion, or taking a hostage. The testimony of the Hamlin Road witnesses supports an inference that defendant acted intentionally and without legal justification or excuse in confining the victim.

Sufficient evidence to sustain defendant's kidnapping conviction was presented. Moreover, because the testimony of one of the Hamlin Road witnesses showed that defendant personally possessed a firearm during the kidnapping, sufficient evidence was presented to sustain defendant's conviction of possession of a firearm during the commission of a felony.

### III

Defendant also complains of the admission of evidence of prior inconsistent statements by the victim and argues that intimidation of the victim by the prosecutor prevented him from calling her as a defense witness. Because the victim was a res gestae witness whom the prosecutor was obligated to call, it was not error to permit the prosecution to impeach the victim. *People v Murry,* 108 Mich App 679, 683; 310 NW2d 836 (1981), see also *People v White,* 401 Mich 482, 508; 257 NW2d 912 (1977). The jury was repeatedly instructed as to the limited permissible use of the victim's prior inconsistent statements.

The inconsistencies between the victim's testimony at trial and her prior statements to the police were so serious that the prosecutor requested the trial court to find the victim in contempt of court or to hold her for trial on perjury

charges. The trial court denied the prosecutor's request; however, the victim's well-founded fear of a perjury prosecution led to her invocation of the privilege against self-incrimination and her refusal to testify as a defense witness. In *Webb v Texas,* 409 US 95; 93 S Ct 351; 34 L Ed 2d 330 (1972), the trial court singled out the only potential defense witness and, in strong and threatening language, warned the witness that he would face a perjury prosecution if he lied while testifying. The witness subsequently refused to testify. The Supreme Court held that the unnecessarily strong terms used by the trial judge, the authority of the trial judge's position, and the trial judge's apparent assumption that the victim would lie if he testified prevented the witness from making a free and voluntary choice whether to testify and thus deprived defendant of his right to present evidence in his defense. However, where the extraordinary circumstances on which the *Webb* decision was based were not present, warnings to potential defense witnesses concerning self-incrimination or possible perjury charges have been held to be proper. See *United States ex rel Robinson v Zelker,* 468 F2d 159, 162, fn 5 (CA 2, 1972); *People v Pantoja,* 35 Ill App 3d 375, 380; 342 NE2d 110, 114 (1976); *State v Brown,* 321 A2d 478 (Me, 1974); *State v Whiting,* 117 NH 701; 378 A2d 736 (1977); *State v Schaub,* 46 Ohio St 2d 25; 346 NE2d 295 (1976), and *Hedgepath v State,* 600 P2d 348 (Okla Crim App, 1979).

Nothing analogous to the extraordinary circumstances on which the *Webb* decision was based was present here. In this case, the issue did not arise until after the victim testified in a manner which, combined with her prior statements to the police, provided an obvious basis for the perjury charge. The trial judge here did not use strong or threat-

ening language to the victim; instead, the prosecution's request that the victim be found in contempt or held for perjury charges was denied. The record here does not suggest that the decision of the victim not to testify further was not free and voluntary; rather, the record suggests that the decision of the victim was based on an accurate appraisal of her legal situation following consultation with her own counsel. No error occurred.

Affirmed.