*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID MARK PARROTT,

Defendant-Appellant.

FOR PUBLICATION
February 4, 2021
9:10 a.m.

No. 350380
Manistee Circuit Court
LC No. 19-016833-AR

Before: CAMERON, P.J., and BOONSTRA and LETICA, JJ.

CAMERON, P.J.

In this intoxicated-driving prosecution, defendant, David Mark Parrott, appeals three district court orders that: (1) prohibited defendant from using his preliminary breath test (PBT) results at trial; (2) held that the area in which defendant's vehicle was stuck was, as a matter of law, generally accessible to motor vehicles; and (3) denied defendant's motion in limine to exclude evidence regarding his occupation and display of his "badge." Defendant appealed the orders to the circuit court, which denied his application for leave to appeal. We then granted leave to appeal.[1] For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

After leaving a 2018 Christmas day gathering at approximately 6:20 p.m., defendant lost control of his car and slid off the roadway. Defendant then "backed down [an] embankment" and into a "flat area" that turned into a field. Defendant spent the next 30 to 35 minutes attempting to return his car to the roadway. Unable to extricate his car, a tow truck driver was called to assist him. Shortly after the tow truck driver arrived at the scene, he called the police because he suspected that defendant was intoxicated. The Manistee County Sheriff's Office dispatched

---

[1] *People v Parrott*, unpublished order of the Court of Appeals, entered December 11, 2019 (Docket No. 350380).

Sergeant Paul Woroniak to the scene at 7:08 p.m. He arrived approximately ten minutes later and saw defendant's car stuck "in the ditch," five to 10 feet from the roadway.

Sergeant Woroniak also suspected that defendant was intoxicated. He noted that defendant smelled like alcohol, had "bloodshot and watery" eyes, and had "labored" speech. After defendant denied that he had consumed alcohol, Sergeant Woroniak attempted to administer a field sobriety test to defendant, but abandoned the test because defendant was not following his instructions. About this time, defendant showed Sergeant Woroniak "his badge" "[a]nd inquired if anything could be done."[2] Undeterred, Sergeant Woroniak continued his investigation. Defendant consented to a PBT at the scene. The PBT result showed an unlawful blood alcohol concentration (BAC) of 0.109.[3]

Sergeant Woroniak informed defendant that the PBT result suggested that defendant was operating his vehicle over the legal limit. In response, defendant told Sergeant Woroniak "that he was going to lose a quarter of his pay," and defendant again asked him "what could be done." Sergeant Woroniak placed defendant under arrest for operating while intoxicated, MCL 257.625(1), and transported defendant to a hospital where his blood was drawn at 8:08 p.m. The chemical test revealed that defendant's BAC was 0.152 grams of alcohol per 100 milliliters of blood. Defendant was then charged with operating while intoxicated.

In preparation for trial, defendant retained an expert who would testify that, at the time defendant was operating his vehicle on the roadway, his BAC was likely below the legal limit and increased above the legal limit after the accident. Specifically, the expert believed that "at all relevant times prior to about 7:10 p.m., [defendant's] blood-alcohol concentration would be expected to be less than the *per se* level of 0.080g/dL" required for a conviction. Defendant asserted that his PBT result must be admitted at trial because the result supported his rising BAC defense.[4]

The district court then decided several motions that are at issue in this appeal. Specifically, the district court granted the prosecutor's motion to exclude any reference to the PBT result at trial under MCL 257.625a(2)(b). The district court denied defendant's motion requesting the court to hold that the area where defendant's car was found was not "generally accessible to motor

---

[2] Defendant was a district court judge at the time of the arrest.

[3] Training related to the operation of a PBT required Sergeant Woroniak to truncate the result to 0.10.

[4] We note that defendant did not move the trial court for a hearing in accordance with *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). Indeed, defendant's first explicit request for a *Daubert* hearing is in his reply brief on appeal. Such a hearing would have allowed this Court to more thoroughly evaluate whether defendant's PBT result is necessary for the expert to render an admissible opinion or is merely a helpful datapoint for defendant's rising BAC theory.

vehicles" under MCL 257.625(1).[5] Lastly, the court denied defendant's motion to exclude any reference to defendant's occupation and his display of a "badge" under MRE 401 and MRE 403.

Defendant appealed these decisions to the circuit court, which denied defendant's interlocutory application for leave to appeal. This Court then granted his interlocutory application.

## II. ANALYSIS

### A. RIGHT TO PRESENT A COMPLETE DEFENSE—THE PBT RESULT

Defendant argues that the district court erred when it excluded "the PBT because the application of the evidentiary statute—MCL 257.625a(2)(b)—unreasonably offends [his] [c]onstitutional right to present a complete defense." We disagree.

"We review issues of constitutional law de novo." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "Preserved evidentiary rulings are reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). A trial court abuses its discretion when it "chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217. "[D]ecisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). Thus, "when such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Id.*

MCL 257.625a(2)(b) addresses when PBT results are admissible for intoxicated-driving prosecutions. "Our overriding goal for interpreting a statute is to determine and give effect to the Legislature's intent. The most reliable indicator of the Legislature's intent is the words in the statute." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011) (citations omitted). "The Legislature is presumed to have intended the meaning it plainly expressed in the statute." *People v Allen*, 499 Mich 307, 314-315; 884 NW2d 548 (2016).

PBT results are generally not admissible in intoxicated-driving prosecutions. Under MCL 257.625a(2)(b), PBT results are admissible only:

> (*i*) To assist the court or hearing officer in determining a challenge to the validity of an arrest[.]

> (*ii*) As evidence of the defendant's breath alcohol content, if offered by the defendant to rebut testimony elicited on cross-examination of a defense witness that

---

[5] The prosecutor charged defendant with either operating his vehicle on a highway *or* operating his vehicle in an area generally accessible to motor vehicles while intoxicated, which could include the 30 to 35 minutes that defendant attempted to get his car back on the roadway.

the defendant's breath alcohol content was higher at the time of the charged offense than when a chemical test was administered under [MCL 257.625a(6)].

> (*iii*) As evidence of the defendant's breath alcohol content, if offered by the prosecution to rebut testimony elicited on cross-examination of a prosecution witness that the defendant's breath alcohol content was lower at the time of the charged offense than when a chemical test was administered under [MCL 257.625a(6)].

Therefore, "under the Michigan Vehicle Code," PBT results "are only admissible to challenge the validity of an arrest or to rebut testimony regarding a defendant's breath alcohol content at the time of the offense." *People v Booker*, 314 Mich App 416, 420; 886 NW2d 759 (2016). As a practical matter, this means that PBT results are rarely admitted at trial for intoxicated-driving prosecutions.

The parties agree that MCL 257.625a(2)(b) prohibits defendant from admitting his PBT result to support his rising BAC defense. The dispute is whether this statutory restriction imposes an unconstitutional impediment on defendant's right to present a complete defense.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (quotation marks and citation omitted). Specifically, "[a] criminal defendant must be provided a meaningful opportunity to present evidence in his or her own defense." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). However, a defendant's right to present a complete defense "is not unlimited and is subject to reasonable restrictions." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). A defendant's "right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. (quotation marks and citation omitted).

> As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. [*United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (quotation marks and citation omitted).]

## 1. ARBITRARINESS

Defendant first argues that MCL 257.625a(2)(b)'s restrictions are arbitrary. To analyze defendant's claim, we must examine the purpose the statute is designed serve.

This Court has previously held that "[t]he long-range goal of the drunk driving laws is to reduce the carnage caused by drunk drivers by preventing intoxicated persons from driving." *People v Tracy*, 186 Mich App 171, 179; 463 NW2d 457 (1990). Additionally, this Court has concluded that the Legislature's "purpose of the PBT use restrictions seems to be to prevent unwarranted convictions based solely on evidence obtained from a testing system which is comparatively unreliable; the breath, blood, and urine test to which all drivers impliedly consent are more accurate and may be administered in more controlled environments than PBTs." *Id*. See

also *Scheffer*, 523 US at 309 ("State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial.").

In this case, defendant asserts that MCL 257.625a(2)(b) is arbitrary because the statute lacks any "principled or reasoned basis[.]" However, we first recognize that the Legislature has concluded that the results of chemical tests, not PBT results, are admissible for intoxicated-driving prosecutions. See MCL 257.625a(6). An operator of a motor vehicle who is arrested for intoxicated driving is required to take a chemical test that is specifically designed to precisely determine the operator's BAC; the result of this test is admissible at trial as evidence of the operator's BAC. *Id.* The Legislature has concluded that PBTs are different; they are devices primarily used by police as an investigative tool to determine whether there is probable cause to arrest a suspected intoxicated driver. MCL 257.625a(2)(b)(*i*).[6] And unlike chemical tests, a PBT result is statutorily inadmissible at trial, unless the PBT result rebuts certain testimony elicited during cross-examination. See MCL 257.625a(2)(b)(*ii*) and (*iii*).

The Legislature's different treatment of these BAC testing devices reflects its assessment that they are not equivalent. As already stated, we have previously recognized that chemical tests "to which all drivers impliedly consent are more accurate [than PBTs] and may be administered in more controlled environments[.]" *Tracy*, 186 Mich App at 179. Conversely, PBTs are "comparatively unreliable." *Id.* PBTs are normally administered in the field, are tested and calibrated for accuracy less frequently than chemical tests,[7] and are primarily designed to assist police officers in making on-the-spot decisions about whether probable cause exists to make an arrest.

Our Legislature's concern about the reliability of PBT results has considerable support. Many legislatures in the country have passed similar laws that expressly restrict the admission of PBT results for intoxicated-driving prosecutions due to concerns about the test's reliability.[8] Most

---

[6] Indeed, even the Legislature's description of the test as *preliminary* reflects that the test is in preparation for something else.

[7] Mich Admin Code, R 325.2653(1) requires "evidential breath alcohol test instrument[s]" to be "verif[ied] . . . for accuracy at least once each calendar week, or more frequently as the department may require." However, PBT devices are required to be tested and calibrated for accuracy only on a monthly basis. Mich Admin Code, R 325.2653(2).

[8] See, e.g., Colo Rev Stat 42-4-1301(6)(i)(III) (Colorado); DC Code 50-1904.01(c) (District of Columbia); Haw Rev Stat 291E-11(f) (Hawaii); Ind Code 9-30-6-5(d) (Indiana); Iowa Code 321J.5(2) (Iowa); Ky Rev Stat Ann 189A.104(2) (Kentucky); Minn Stat 169A.41(2) (Minnesota); Mo Rev Stat 577.021(3) (Missouri); Nev Rev Stat 484C.150(3) (Nevada); NC Gen Stat 20-16.3(d) (North Carolina); ND Cent Code 39-20-14(3) (North Dakota); 75 Pa Cons Stat 1547(c) (Pennsylvania); 31 RI Gen Laws 31-27-2.3(a) (Rhode Island); Vt Stat Ann, tit 23, § 1203(f) (Vermont); Va Code Ann 18.2-267(E) (Virginia); W Va Code 17C-5-5 (West Virginia); Wis Stat 343.303 (Wisconsin). See also *United States v Iron Cloud*, 171 F3d 587, 590 (CA 8, 1999) ("[A]lmost every state that has addressed the issue has refused to admit [PBT results] for purposes other than probable cause.")

states bar PBT results at trial because they have concluded that the results are inherently unreliable. Our Legislature permits the use of PBTs to assist police officers in determining whether there is probable cause to arrest, but the PBT result may not be admitted in intoxicated-driving trials, unless the result rebuts certain testimony elicited during cross-examination. While defendant questions the logic of this policy, the broad, national consensus favoring the restriction of PBT results lends further support that our Legislature has not arbitrarily imposed restrictions on the use of PBT results at trial.[9] We conclude that MCL 257.625a(2)(b) reflects the exercise of legislative authority that is consistent with our government's "legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial." See *Scheffer*, 523 US at 309.[10]

We further conclude that the admission of a second, less reliable BAC test also has the potential to confuse the jury. The prosecution argues that the legislative history of MCL 257.625a(2)(b) suggests an intent to restrict the use of PBT results in order "to prevent unwarranted . . . jury confusion[.]" The prosecution points to a prior version of MCL 257.625a

---

[9] Defendant asks us to adopt an analysis similar to that provided in *Fischer v Ozaukee Co Circuit Ct*, 741 F Supp 2d 944 (ED Wis, 2010), which involved the United States District Court for the Eastern District of Wisconsin granting habeas relief and vacating the defendant's intoxicated-driving conviction after the court concluded that Wisconsin's statute barring PBT results at trial violated the defendant's constitutional right to present a defense. However, this opinion is not binding on this Court, and we find its analysis unpersuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts.") Indeed, we have not found a single appellate court that has adopted the *Fischer* Court's analysis. Even the Wisconsin state appellate court continues to uphold Wisconsin's PBT statute. See *State v Giles*, 389 Wis 2d 377; 2019 WI App 65; 936 NW2d 419 (2019) (holding that the federal district court's *Fischer* is not binding authority and that "the circuit court did not violate [the defendant's] constitutional right to a defense by excluding the PBT results and associated expert testimony").

[10] Defendant asserts that it is illogical to impose a restriction on the admission of PBT results for intoxicated-driving prosecutions, yet permit the admission of PBT results in other criminal and civil cases. We disagree. With respect to cases involving minors in possession of alcohol, PBT results are admissible to show the presence of alcohol; the *amount* of alcohol is essentially irrelevant so long as alcohol is present in the minor's system. Defendant is correct that PBT results are admissible in prosecutions where the defendant is in possession of a firearm while he or she has a BAC of ".08 or more grams per 100 milliliters of blood[.]" MCL 750.237(1)(b); *Booker*, 314 Mich App at 419-421. However, as discussed in detail in this opinion, the Legislature's decision to exclude PBT results in intoxicated-driving prosecutions is reflective of a sound policy decision. We will not pass judgment on the Legislature's failure to create a similar policy with respect to prosecutions under MCL 750.237(1)(b).

-6-

that allowed defendants to admit their PBT results in support of a rising BAC defense.[11]  But in 1994, the Legislature amended MCL 257.625a to restrict the use of PBT results at trial such that neither the prosecutor nor the defendant may move to admit PBT results at trial unless the results rebut testimony elicited during cross-examination.  The amendment has undoubtedly had an effect on intoxicated-driving trials.  For instance, because PBT results are rarely admitted at trial, hearings concerning the accuracy, reliability, and scientific support underlying the PBT, as compared to a chemical test, rarely occur.  Furthermore, jury confusion over what weight should be given to the result from a less reliable device does not generally occur.  We conclude that our Legislature has a legitimate interest in limiting collateral litigation and jury confusion concerning the result of comparatively unreliable breath tests.  See *Scheffer*, 523 US at 309.  When viewed in this context, MCL 257.625a(2)(b) simply does not reflect an arbitrary exercise of a governmental authority.

## 2.  DISPROPORTIONALITY

Defendant next argues that MCL 257.625a(2)(b) is disproportionate because the statute's exceptions favor the prosecution.  MCL 257.625a(2)(b) provides two narrow exceptions that allow for the admission of PBT results at trial.  Prosecutors can move for the admission of a PBT result when the result rebuts testimony elicited during a defendant's cross-examination that the defendant's BAC was lower at the time of driving than when the chemical test was administered, thereby rebutting the defendant's assertion of a rising BAC.  MCL 257.625a(2)(b)(*iii*).  And defendants can move for its admission when the result rebuts testimony elicited during the prosecutor's cross-examination that the defendant's BAC was higher at the time of driving than when the chemical test was administered, thereby rebutting the prosecutor's assertion of a decreasing BAC.  MCL 257.625a(2)(b)(*ii*).  Defendant argues that defendants are rarely able to

---

[11] MCL 257.625a(2)(b), as amended by 1994 PA 450, provided as follows:

The results of a preliminary chemical breath analysis are admissible in a criminal prosecution for a crime enumerated in section 625c(1) or in an administrative hearing for 1 or more of the following purposes:

(*i*) To assist the court or hearing officer in determining a challenge to the validity of an arrest.  This does not limit the introduction of other competent evidence offered to establish the validity of an arrest.

(*ii*) As evidence of the defendant's breath alcohol content, if offered by the defendant.

(*iii*) As evidence of the defendant's breath alcohol content, if offered by the prosecution to rebut testimony or other evidence, including but not limited to testimony elicited on cross-examination of a prosecution witness, that is offered or elicited to prove that the defendant's breath alcohol content was lower at the time of the charged offense than when a chemical test was administered pursuant to subsection (6).

introduce their PBT results at trial under this statutory scheme because prosecutors do not cross-examine defense witnesses about a possible declining BAC when (1) the prosecutor knows that the PBT result is higher, not lower, than the result of the chemical test and (2) the prosecutor already has the result of a chemical test that is evidence of intoxication. Defendant asserts that prosecutors are far more successful moving to admit PBT results at trial because defendants, eager to show that his or her BAC was lower at the time of driving, open the door during their cross-examination allowing for the admission of a PBT result that is detrimental to their case. This imbalance, defendant argues, is "diabolical" and renders MCL 257.625a(2)(b) disproportionate. We disagree.

In MCL 257.625a, the Legislature equalized how both defendants and the prosecution can use PBT results. The plain language of the statute treats defendants and the prosecutors the same: neither may use PBT results, unless the result rebuts certain testimony regarding the defendant's BAC at the time of the offense. MCL 257.625a(2)(b)(*ii*) and (*iii*). The statute provides neither party an advantage. And even if we were to accept defendant's premise that prosecutors tend to have greater success when moving for the admission of PBT results, any imbalance is due to a defendant's cross-examination that opens the door to an unfavorable PBT result. We fail to see how a defendant's ill-advised cross-examination of a government witness renders a neutral statute unconstitutionally disproportionate. Accordingly, MCL 257.625a(2)(b) does "not abridge [a defendant's] right to present a defense" because it is "not arbitrary or disproportionate to the purposes [it is] designed to serve." See *Scheffer*, 523 US at 308.

### 3. APPLICATION OF MCL 257.625a(2)(b) AS TO DEFENDANT

Our conclusion that MCL 257.625a(2)(b) is not arbitrary or disproportionate does not end our analysis. We must next consider whether the application of MCL 257.625a(2)(b) in this case would deprive defendant of his constitutional right to present a complete defense.

Defendant argues that prohibiting him from admitting his PBT result will deprive him of a meaningful opportunity to present a complete defense because he will not be able to rebut the presumption in MCL 257.625a(6)(a). MCL 257.625a(6)(a) provides as follows:

> The amount of alcohol or presence of a controlled substance or other intoxicating substance in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding and is presumed to be the same as at the time the person operated the vehicle.

Defendant argued before the district court that he intended to produce and qualify an expert witness at trial, who would testify that "at all relevant times prior to about 7:10 p.m., [defendant's] blood alcohol concentration would be expected to be less than the *per se* level of 0.080 g/dL." According to defendant, "the data points of 0.10 and 0.152[,] . . . along with other relevant testimony from witnesses and the simple physiology of the human body[,] will support his defense[.]" In short, defendant seeks to introduce his PBT result into evidence to support his argument that his BAC was below the legal limit at the time his vehicle left the roadway.

-8-

On appeal, defendant argues generally that he will "most likely be deprived of an opportunity to present any defense at all" if the PBT result is not admitted as substantive evidence. Notably, defendant stops short of arguing that he will be deprived of an expert witness if the PBT result is not admitted as substantive evidence at trial. Indeed, there seems to be no dispute that defendant could still present evidence concerning (1) his weight and body type, (2) the quantity and kind of alcohol and food he consumed, (3) the timing of any consumption, and (4) the time delay between his operation of the vehicle and the blood draw. Defendant could then present expert testimony concerning how the body metabolizes alcohol to support his argument that his BAC was lower at the time he was operating his motor vehicle and increased as time passed. As conceded by defense counsel at oral argument, the issue here is that defendant's chemical test result is so far above the legal limit that the PBT result is necessary because without it the expert's opinion testimony appears speculative. While the PBT result may be helpful to the defense, defendant—like defendants before him—may still present expert testimony that his BAC was lower at the time he was driving because his BAC was increasing as the evening continued. He simply may not use his PBT result to do so.

Therefore, we conclude that defendant is not deprived of the meaningful opportunity to present a complete defense.[12] Consequently, the district court did not err when it held that the PBT result is inadmissible as substantive evidence under MCL 257.625a(2)(b).

B. MCL 257.625a(2)(b)'S ALLEGED "CONFLICT" WITH MRE 702 AND MRE 703

Defendant also argues that the PBT results are admissible under MRE 702 and MRE 703 and that MRE 702 and MRE 703 "prevail over" MCL 257.625a(2)(b). We disagree.

Under our Constitution, "the Supreme Court's rule-making power in matters of court practice and procedure is superior to that of the Legislature." *People v McDonald*, 201 Mich App 270, 272; 505 NW2d 903 (1993). "The rules of practice and procedure include the rules of evidence." *Id*. However, the Legislature is not "wholly without power to enact statutes governing the admissibility of evidence[.]" *Id*. "[T]he Legislature may enact statutory rules of evidence that do not conflict with the Michigan Rules of Evidence, and those statutory rules are enforceable until superseded by the Supreme Court." *Id*. at 273. "[S]tatutory rules of evidence that reflect policy considerations limited to the orderly dispatch of judicial business, i.e., court administration, are procedural and violate Const 1963, art 6, § 5." *People v Watkins*, 491 Mich 450, 474; 818 NW2d 296 (2012) (quotation marks omitted). But "statutory rules of evidence that reflect policy considerations over and beyond matters involving the orderly dispatch of judicial business are substantive, and in the case of a conflict with a court rule, the legislative enactment prevails." *Id*. (quotation marks omitted).

---

[12] See *Giles*, 389 Wis 2nd at 4. (holding that "[T]he circuit court did not violate [the defendant's] constitutional right to a defense by excluding the PBT results and associated expert testimony."); See also *State v Shuler*, 168 Ohio App 3d 183; 858 NE2d 1254, 1257 (2006) (holding that the trial court's exclusion of an unreliable PBT result for evidential purposes did not violate the defendant's federal constitutional rights to due process or compulsory process.)

Even when assuming that MCL 257.625a(2)(b) irreconcilably conflicts with MRE 702 and MRE 703, we conclude that defendant would not be entitled to the relief he seeks, i.e., admission of the PBT result under MRE 702 and MRE 703. This is because MCL 257.625a(2)(b) is substantive—not procedural—in that it is based on "policy considerations over and beyond matters involving the orderly dispatch of judicial business." See *Watkins*, 491 Mich at 467. Indeed, as already discussed in detail, there are legitimate policy reasons underlying the Legislature's decision to allow admission of PBT results only in limited circumstances. Therefore, even to the extent that MCL 257.625a(2)(b) irreconcilably conflicts with MRE 702 and MRE 703, MCL 257.625a(2)(b) prevails. See *id*. at 472.

## C. MOTION TO DISMISS

Defendant next argues that the district court erred by denying his motion to dismiss his criminal charge because, under the plain language of MCL 257.625(1), his vehicle was not found in an area that was "generally accessible to motor vehicles." We disagree.

"Whether a defendant's conduct falls within the scope of a penal statute is a question of statutory interpretation that is reviewed de novo." *People v Rea*, 500 Mich 422, 427; 902 NW2d 362 (2017). "The Michigan Vehicle Code, MCL 257.1 *et seq.*, prohibits a person from operating a motor vehicle while intoxicated." *Id*. at 428. MCL 257.625(1) provides in relevant part as follows:

> A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated.

"Accordingly, MCL 257.625(1) prohibits operating a vehicle while intoxicated in three types of locations: (1) upon a highway, (2) in a place open to the general public, or (3) in a place generally accessible to motor vehicles." *Rea*, 500 Mich at 428. As relevant to this appeal, whether a particular area is "generally accessible to motor vehicles" "involves a legal question that must be resolved by the court." *Id*. at 428 n 2.

"[T]he Michigan Vehicle Code does not define the phrase 'generally accessible.' " *Rea*, 500 Mich at 429. However, our Supreme Court decided that "the plain and ordinary meaning of the phrase 'generally accessible' means 'usually capable of being reached.' " *Id*. at 429-430. In doing so, the Court held:

> The word "generally" is an adverb that modifies the adjective "accessible." "Generally" is defined as "in a general manner"; "in disregard of specific instances and with regard to an overall picture"; and "as a rule: USUALLY." The term "accessible" means "providing access"; "capable of being reached: being within reach" and "capable of being used or seen." Therefore, the plain and ordinary meaning of the phrase "generally accessible" means "usually capable of being reached."

> This phrase must be considered in its statutory context: "other place . . . generally accessible to motor vehicles." The phrase "generally

-10-

accessible" modifies the preceding noun phrase "other place." Accordingly, the prohibition in MCL 257.625(1) against operating a vehicle while intoxicated does not apply to every place. Instead, the statute's prohibition applies only to highways, to other places open to the general public, and to other places that are generally accessible—that is, usually or ordinarily capable of being reached. Finally, we must incorporate the phrase "to motor vehicles," which is an adverbial prepositional phrase that modifies "generally accessible." The Michigan Vehicle Code defines "motor vehicle" as "every vehicle that is self-propelled . . . ." Therefore, as a whole, the relevant statutory provision prohibits an intoxicated person from operating a vehicle in a place that is usually capable of being reached by self-propelled vehicles. [*Rea*, 500 Mich at 429-431 (citations and footnotes omitted).]

In this case, defendant argued in his motion to dismiss that the prosecution would be unable to prove that defendant was intoxicated while he was driving on the roadway because he was still absorbing alcohol. Defendant also argued that his intoxication level at the time that his vehicle was in the private field was irrelevant because the private field, which was "surrounded by brush and trees, and constituted raw, undeveloped and uncultivated land," was not generally accessible to motor vehicles. Defendant further argued that "[t]here [were] no curb cuts, driveways, two-tracks, trails or any other features or structures designed for or adapted to the usual and ordinary access of that part of the field by motor vehicles." Defendant noted that, because of the steep embankment and his inability to extricate the vehicle from the field, "it cannot possibly be said that that area is usually or ordinarily or easily capable of being reached by motor vehicles."

The prosecution responded by arguing that the field was an area that was generally accessible. The prosecution explained that its theory of the case was that defendant's BAC was above the legal limit at the time he was driving on the roadway. Therefore, the prosecution indicated that it intended to prove that defendant was operating his vehicle on a highway and/or in an area generally accessible to motor vehicles while he was intoxicated.

At an evidentiary hearing, the prosecutor asked Sergeant Woroniak to describe "where the vehicle was located in relation to [Chrestensen] Road and Milarch Road when [he] arrived on [the] scene." The following exchange then occurred:

> *Sergeant Woroniak*: . . . [Chrestensen] Road runs east and west, Milarch Road runs north and south. The vehicle was located in a ditch area, which would be off the main travel portion of the roadway, almost equal parts [Chrestensen] and equal parts of Milarch, but in the ditch.

> *The Prosecutor*: What part of the intersection was it in? Was it in the southwest corner, northwest corner, northeast corner, or the southeast corner?

> *Sergeant Woroniak*: Southwest corner.

> *The Prosecutor*: "Southwest corner." So, it would be south of [Chrestensen] road, and west of Milarch Road? Is that what we understood your testimony is?

> *Sergeant Woroniak*: Correct; yes.

*The Prosecutor*: Approximately, how far from each roadway?

*Sergeant Woroniak*: Approximately ten feet.

*The Prosecutor*: "Approximately ten feet"?

*Sergeant Woroniak*: Five to ten feet, yeah.

* * *

*The Prosecutor*: Do you remember which way the vehicle was facing, as far as directional travel out? Up here is direction of travel from where it sat (indicating). You know, where was the front of the car facing, what direction?

*Sergeant Woroniak*: . . . [I]t looked to me that the nose of the vehicle was facing [Chrestensen] Road.

*The Prosecutor*: Okay. So, to the north-northwest.

*Sergeant Woroniak*: Correct.

Defendant testified that, after he slid on the snow and into the brush on the edge of the travelled portion of Chrestensen Road on December 25, 2018, he backed his vehicle down the embankment and onto a flat area that turned into a field. In the spring of 2019, defendant took photographs of "the final location of the vehicle," and the photographs were admitted. Defendant testified that one of the photographs depicted a "hole" that was from "the tire rut from [his] right-rear tire." He further testified that "[t]he back of the car would have been immediately behind that, and the side of the car would have extended parallel, along the embankment, with the front of the car facing to the west." Thereafter, the following line of questioning occurred:

*Defense Counsel*: How far were you from Milarch Road—I'm sorry— [Chrestensen] road?

*Defendant*: From my measurements, from—you say [Chrestensen] Road?

*Defense Counsel*: The road that has the stop sign, sir.

*Defendant*: There were some exhibits attached. I took those measurements, and I tried to take as many photos as possible, to try to be as accurate as possible. And my measurements show that I was—how can I put this—I tried to ascertain the center line of [Chrestensen] Road, by measuring between—there's a curve. You can see a painted curve on both sides of [Chrestensen] Road—yes—and it goes around a corner. So, I attempted to ascertain—the way I ascertained the center line of the road, is that I measured between those two curves, and then divided that in half, and I think they came out to be 17 feet, 9 inches. And then I measured from the same spot at the curve down to the rut. But exactly to the rut, because the rut is actually beyond the curve, and I wanted it to be perpendicular; I didn't want it to be on an angle or to distort the measurement. And, you will see in this picture, I

-12-

found an arrow, and I put in the ground, and then I put a stick over here, to give the idea where I was measuring to, and the measuring came out to be 17 feet, 3 inches, that's what I added to the 17 feet, 9 inches, indicated to me that my car was 35 feet from the center line of [Chrestensen] Road. The arrow, actually, I think I meant that to be the 33 feet. You can "ballpark it," but it was two feet.

*Defense Counsel*: And from Milarch, same?

*Defendant*: No, Milarch, I was much farther away. But I stopped measuring because I had a 25-foot tape measure, and I measured from the curve, and I ran it out twice. I guess my recollection of the position of the vehicle is not the same as the officer's, apparently—the Sergeant's.

After the hearing, the district court stated that it would accept supplemental briefing. In defendant's supplemental brief, he requested that the district court "order the prosecution of [defendant] for the alleged violation of MCL 257.625(1) be limited to" the period of time before "his vehicle entered the field." With respect to whether the field was generally accessible, defendant argued that "[s]imply because an area is 'accessible' . . . does not mean that it is *generally* accessible." Defendant further argued that "[g]enerally accessible doesn't mean occasionally accessible; it doesn't mean sometimes accessible; it doesn't mean accessible with great or unusual effort or by accident; it doesn't mean not ordinarily or not regularly." According to defendant, the area where his vehicle was located was not generally accessible. Specifically, defendant "submit[ted] that . . . areas not designed for vehicular travel, are by their nature, areas a vehicle is not usually capable of accessing." Defendant further noted that the field "contain[ed] natural barriers to entry, including steep embankments, [and] brush and trees along its perimeter." According to defendant, he was only able to enter the field by "mere happenstance and by accident[.]"

Defendant also argued that, even if the prosecutor was permitted to prosecute him for his "conduct in the field," the charge should be dismissed because he presented evidence at the hearing that "his vehicle was not within [the] boundaries of the highway after he backed down the embankment into the field." Defendant cited MCL 221.20, which provides:

All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods in width on each side of such lines.

Defendant argued that because he presented evidence "that his vehicle was 35 feet from the centerline of Chrestensen and over 50 feet from Milarch," he "made a *prima facie* showing that his vehicle was not within [the] boundaries of the highway after he backed down the

embankment into the field."  Defendant also argued that review of the video from Sergeant Woroniak's body camera established that his "distance estimate is simply mistaken."  The prosecution also filed a supplemental brief, which largely reiterated the arguments contained in its original responsive pleading.

When the district court later heard oral argument, defense counsel reiterated the arguments contained in the pleadings and referenced testimony provided by Sergeant Woroniak and defendant at the earlier evidentiary hearing.  Specifically, defense counsel noted that "when . . . the car gets down 35-feet from the center point of [Chrestensen], as [defendant] testified to, that he measured it, and easily almost 50 feet from the center of Milarch, at that point it was not in an area where it could be operated as defined by the statute."  Defense counsel also indicated that it would be understandable if the district court decided that additional testimony was needed before it ruled on the motion.  The prosecution requested that, under *Rea*, the district court "find, as a matter of law, that [defendant's] vehicle was found in a place that's generally accessible to motor vehicles[.]"

The district court ruled:

> I don't think we need more factual evidence on it.  You know, we have several exhibits that have been submitted, and [defendant] testified for his observations out there as well; the officer did as well.
>
> The leading case on this, the Court agrees with Counsel that it's *People v Rea*, Michigan Supreme Court case 500 Mich 422, that case does appear to make it as a matter of law for the Court to determine whether the area in question meets the statutory definition of potentially being a place where somebody could drive intoxicated.
>
> In this particular case, the *Rea* court indicated the plain and ordinary meaning of the phrase "generally accessible" means, quote, "usually capable of being reached," end quote.  This particular aspect of "generally accessible to motor vehicles," is what we're looking at.  "A place generally accessible to motor vehicles," there's multitudes of motor vehicles by definition.  Essentially, motor vehicle means, "Every vehicle that is self-propelled."  And so, what can we determine about this area at the intersection of [Chrestensen] Road and Milarch Road?
>
> The area in question is, in fact, a place that the Defendant did reach with his vehicle.  The standard that *Rea* gave was "usually capable of being reached."  We essentially have a road that falls off into a ditch area a little bit, then kind of levels out in, essentially, a field.  And the *Rea* case, I think, really gave a rather broad conclusion or interpretation of the statute, "usually capable of being reached."  I don't see anything particular about this location that makes it a situation other than usually capable of being reached.
>
> So, based upon what the Supreme Court of Michigan is saying in *People v Rea*, the ditch area and field in close proximity to the intersection of [Chrestensen]

and Milarch Road, would, in this Court's interpretation, be a place generally accessible to motor vehicles, and would be potentially a location where somebody could be operating a motor vehicle while intoxicated, potentially, depending on the facts in the case. So, that would be my ruling on the question of law as to whether this is a place generally accessible to motor vehicles.

Thus, the district court concluded that the area where defendant's vehicle was located was generally accessible to motor vehicles because it was "usually capable of being reached." The district court then entered an order consistent with its ruling from the bench.

Although the district court did not make exact factual findings concerning how close defendant's vehicle was to the roadway when it came to rest in the field, we can infer from its on-the-record findings that the court accepted Sergeant Woroniak's testimony. Specifically, the district court stated "[t]he area in question is, in fact, a place that the Defendant did reach with his vehicle . . . . We essentially have a road that falls off into a ditch area a little bit, then kind of levels out in, essentially, a field." The district court also found that "the ditch area and field [were] in close proximity to the intersection of [Chrestensen] and Milarch Road[.]"

Applying the reasoning in *Rea* to this case, we conclude that the district court did not err by concluding that the field where defendant's vehicle was found was generally accessible to motor vehicles. See MCL 257.625(1). Although it appears to be undisputed that there were some obstacles, such as bushes lining the uncultivated field, it is clear that defendant was nonetheless able to access the field without extraordinary effort. Specifically, defendant testified that, after he slid on the snow into the brush on the edge of the travelled portion of Chrestensen Road, he backed his vehicle down an embankment and onto the flat area that became a field. Indeed, the photographs that were taken by defendant and admitted into evidence do not depict any objects that would prevent a vehicle from entering the field.[13] Thus, there was nothing in the area that prevented defendant's vehicle from entering the field. See e.g., *Rea*, 500 Mich at 435 (noting that there was "nothing on [the] defendant's driveway that would prevent motor vehicles on the public street from turning into it").

As noted by the district court, testimony at the hearing showed that the area where defendant's vehicle came to rest was in close proximity to two public roadways. Defendant's vehicle certainly had the ability to enter the area a short period of time after he was traveling on the roadway. Although defendant argues on appeal that his vehicle had to be extracted from the field with a tow truck, this does not change the fact that the area was "in a place that" was "capable of being reached by [a] self-propelled vehicle[]." *Id*. at 431. Indeed, it appears from defendant's testimony that he was unable to extract his vehicle because of the snow, because of the incline between the field and the road, and because his rear tire became "stuck." In sum, we conclude that

_____

[13] Defendant agreed that the photographs were "a fair and accurate depiction of the final resting spot of the vehicle[.]" When asked if there were any differences between the photographs and how the scene appeared on December 25, 2018, defendant responded, "It was early in the season, the brush—the foliage hasn't come up. So pretty much, the only difference that I recall, is there's no snow."

-15-

the district court did not err by concluding that the area in which defendant's vehicle was found was generally accessible to motor vehicles.

## D. EVIDENCE OF DEFENDANT'S CONDUCT AND STATEMENTS

Finally, defendant argues that the district court improperly denied his motion to exclude any reference to his occupation at trial. We review "[p]reserved evidentiary rulings . . . for an abuse of discretion." *Unger*, 278 Mich App at 216.

As already discussed, Sergeant Woroniak testified that defendant showed him "his badge" "[a]nd inquired if anything could be done" while Sergeant Woroniak was in the process of completing his investigation. Thereafter, Sergeant Woroniak informed defendant about the PBT result. Defendant stated "that he was going to lose a quarter of his pay," and, again asked Sergeant Woroniak "what could be done." Defendant also engaged in similar conduct with the tow truck driver. Specifically, defendant allegedly displayed "a badge" and identified himself as a "court officer from down state."

During pretrial proceedings, defendant filed a motion in limine to preclude the prosecution from introducing evidence that defendant "wanted to 'get out of' getting arrested by informing the law enforcement officers/others at the scene that he [wa]s a court officer or even a judge in the Wayne County area." In his motion, defendant noted that evidence supported that he had displayed a "badge." Defendant alleged that "[h]is occupation [wa]s not relevant" and that, even if the district court determined that it was marginally relevant, the evidence should be excluded under MRE 403. In response, the prosecution argued that defendant's conduct was relevant and highly probative of his consciousness of guilt.

After hearing oral argument, the district court ruled:

> Well, in looking at this matter, I think generally speaking, statements that Defendants make, or their actions at the time of a traffic stop, are generally information that can go to the jury. In this case, if there are statements and actions by Defendant to make persons on the scene aware of [his] general occupation or line of business to gain potentially some favor, is an argument that the Prosecutor could make, and there's arguments that the Defendant could make as well. But I think the Prosecutor should be able to make an argument of a consciousness of guilt-type statement as to what people say or do when they're in a position that looks like they could be in some trouble.

> In terms of prejudicial, any comments against Defendant are prejudicial. I think the question is: Is it just so highly prejudicial, that—is it so highly prejudicial that it can't be probative, that it can't help the jury? There can be a limiting instruction, details of which could be worked out, but certainly along the lines that the Defendant's occupation cannot be taken into account in deciding whether [he] is guilty or not guilty, but I think any statements and conduct by the Defendant at the scene, is something that is relevant, I think it's admissible, and either side can make whatever argument they believe is pertinent to it. So, I think it should be admitted.

Thus, it appears that the district court held that defendant's statements and actions at the scene—including displaying his badge—are admissible. Although the district court was somewhat vague in its ruling, clarification from the district court is not necessary. During oral argument before this Court, the prosecution indicated that it did not intend to introduce evidence that defendant was employed as a district court judge at the time of the offense. The prosecution also indicated that it was only seeking to introduce the conduct and statements that were directed toward Sergeant Woroniak. Consequently, we focus our analysis on whether defendant's alleged request to Sergeant Woroniak of whether "something could be done" and that he presented a "badge" to Sergeant Woroniak is admissible under MRE 401, 402, and 403.

MRE 401 defines relevant evidence as evidence having "any tendency to make a fact more or less probable than it would be without the evidence." MRE 402 also provides that "irrelevant evidence is not admissible." Evidence that reflects a defendant's consciousness of guilt is relevant. *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). "Evidence of an attempt to avoid arrest . . . in a criminal case is relevant, material, admissible and can lead to an inference of guilt." *People v Biegajski*, 122 Mich App 215, 220; 332 NW2d 413 (1982). A "defendant's demeanor, nonresponsive conduct, and statement" may be properly admitted to evidence consciousness of guilt. *People v Solmonson*, 261 Mich App 657, 667; 683 NW2d 761 (2004). It is ultimately for the jury to determine whether a defendant's conduct was indicative of consciousness of guilt. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996).

We conclude that, contrary to defendant's assertions, his statements and actions are relevant to proving his consciousness of guilt. In this case, a jury could infer from defendant's conduct that defendant knew he was unlawfully operating a vehicle while under the influence. Defendant's conduct and statements could also support an argument that he was attempting to curry favor with law enforcement and influence the investigation's outcome to avoid arrest. Therefore, we conclude that defendant's conduct of displaying his badge and his statement whether "something could be done" are relevant.

Defendant's prearrest statement and conduct are also admissible under MRE 403. MRE 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, evidence is not "unfairly prejudicial" simply because it is damaging to a defendant's case. Rather, "unfair prejudice" "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). "Evidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." *Id.* (quotation marks and citation omitted; first alteration omitted; second alteration in original). "In this context, prejudice means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *Schaw*, 288 Mich App at 237.

We conclude that defendant's alleged statement and conduct of displaying his badge are admissible under MRE 403. Although this evidence could potentially prejudice defendant, MRE 403 only excludes relevant evidence "if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In this case, the probative value of defendant's alleged statement and display of his badge is not substantially outweighed by unfair prejudice because it is highly probative in that it reflects his consciousness of guilt. See *Schaw*, 288 Mich App at 237-238. Additionally, the district court stated that it would provide a limiting instruction, informing the jury that it could *not* use evidence of defendant's position as a court officer to determine whether he was guilty. Because "[i]t is well established that jurors are presumed to follow their instructions," *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), this is sufficient to minimize any prejudice and protect defendant's right to a fair trial. Thus, trial court did not abuse its discretion.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Anica Letica